CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY V. CASS COUNTY ET AL.

FILED APRIL 21, 1897. No. 8923.

1. **Appeal and Error**: ELECTION OF REMEDIES. If the judgment which a litigant seeks to have reviewed in this court is appealable he may have it reviewed on appeal or error at his election. He may

make such election at any time before the final submission of the case in this court. He may dismiss his appeal and stand on his petition in error, or *vice versa*, but if he makes no such election this court will review the judgment of the district court on error only when there is filed with the transcript here a petition in error.

2. **Motion for New Trial.** Though the grounds of a motion for a new trial are not stated in the exact language of section 314 of the Code of Civil Procedure, if they are in substance the same the statute is satisfied.

3. ———: ASSIGNMENTS OF ERROR: REVIEW. Where the grounds of a motion for a new trial are in substance those prescribed by section 314 of the Code, and the assignments in the petition in error are based upon those grounds, this court is not without jurisdiction to review a case on error simply because the petition in error does not specifically allege that the court below erred in over-ruling the motion for a new trial.

4. **School Districts:** TAXATION: RAILROAD BRIDGES: EVIDENCE: INJUNC-TION: ESTOPPEL. The tax agent of a railroad company in the year 1895, and for several years prior thereto, listed for taxation with the officers of a school district a bridge which was a part of his principal's railroad, erroneously believing that such bridge was within the limits of such school district. The railroad company paid the taxes assessed by the school district against the bridge for all the years prior to 1895. It then brought suit to enjoin the 1895 tax on the ground that said bridge was, as a matter of fact, not within the limits of such school district. *Held*, (1) That the action did not call into question the legality of the organization of the school district; (2) that if jurisdiction to levy the tax was a franchise or privilege within the meaning of section 8, subdivision 3, chapter 79, Compiled Statutes, and such franchise or privilege was called into question by the action, still the court was not required by said statute to conclusively presume anything further than the legal organization of the school district; (3) that the court was not required to conclusively presume that the bridge was within the limits of the school district because it had assumed the right to tax it for more than one year; (4) that the court was not bound to presume that the bridge was within or without the limits of the school district; (5) that the *situs* of the bridge was a question of fact to be determined from the evidence; (6) that the railroad company was not estopped from maintaining the action because of its conduct in listing the property for taxation; (7) that a proper remedy of the railroad company was injunction, and not *quo warranto*.

5. **District Courts:** VOID TAXES: INJUNCTION. The district courts of this state are, by the constitution, invested with general equity jurisdiction, and this includes the authority to enjoin the collec-

tion of a void tax; and this jurisdiction the legislature can neither take away nor impair.

6. **School Districts:** TAXATION. In the absence of express legislative authority the officers of a school district are without jurisdiction to levy a tax upon real estate not within the limits of their school district, and a tax so levied, no matter for what purpose, is absolutely void.

7. ———: ———: BOUNDARIES: RAILROAD BRIDGES. The evidence examined, and *held* to establish (1) that the eastern boundary of school district No. 2, in Cass county, coincides with the eastern boundary of section 20, in township 12 N., and range 14 E., of the sixth P. M.; (2) that the eastern boundary of said section 20 is the high-water line of the west bank of the Missouri river; (3) that no part of the bridge in controversy is within the limits of said school district.

ERROR from the district court of Cass county. Tried below before RAMSEY, J. *Reversed.*

*J. W. Deweese, F. E. Bishop,* and *Byron Clark,* for plaintiff in error.

*A. J. Graves, C. S. Polk,* and *Beeson & Root, contra.*

RAGAN, C.

In the district court of Cass county the Chicago, Burlington & Quincy Railroad Company (hereinafter called the "railroad company") brought this suit against said county, the county treasurer, school district No. 2, and Plattsmouth precinct thereof to enjoin the collection of certain taxes levied for school purposes by said school district No. 2 against the west half of the railroad company's bridge across the Missouri river, basing its right to the injunction upon the contention that no part of the west half of said bridge was within the limits of said school district. The district court dismissed the railroad company's petition, and it brings the decree here for review. The connection of the county and the county treasurer thereof with the case is unimportant, so far as this opinion goes, and in what we have to say no reference will be made to Plattsmouth precinct, as the rights of all the parties will be determined by the decision of

the question as to whether any part of the west half of the railroad company's bridge is in said school district No. 2.

1. The defendants below contend that the case is here on error, while the railroad company insists that it is here on appeal. It appears that upon the rendition of the decree by the district court the railroad company filed a motion for a new trial, and upon this being overruled took an exception to such ruling. Within six months after the date of the rendition of the decree the railroad company filed in this court a certified transcript of the proceedings in the case; that thereupon a summons in error was issued by the clerk of this court and served upon the defendants below. The record does not contain this summons in error, but it is admitted by counsel here that it was issued and served; nor does the record disclose that this summons in error was issued in pursuance of a written *præcipe* filed therefor by the railroad company as provided by section 585 of the Code. But since the clerk of this court would have had no authority to issue a summons in error without such written *præcipe* therefor having been filed, we will presume that such *præcipe* was filed. Within a year from the date of the rendition of the decree below the railroad company filed with the clerk of this court a paper which is substantially a petition in error, although denominated "assignments of error on appeal." In *Beatrice Paper Co. v. Beloit Iron Works*, 46 Neb., 900, it was said: "If the judgment which the litigant seeks to have reviewed is appealable, he may have it reviewed on appeal or error, at his election; and he may make such election at any time before the final submission of the case in this court. He may dismiss his appeal and stand on his petition in error or *vice versa;* but if he makes no such election this court will review the judgment of the district court on error [only] when there is filed with the transcript [here] a petition in error." To the same effect see *Shaw v. Robinson*, 50 Neb., 403; *Woodard v. Baird*, 43 Neb., 310; *Monroe v. Reid*, 46 Neb.,

316.   Since the railroad company made no application to this court before the submission of this case to withdraw or dismiss its petition in error and stand upon its appeal, and taking into consideration its other conduct in the premises, we think the railroad company must be held to have elected to have this case tried in this court on error.

2. The defendants in error insist that the decree of the district court must be affirmed without an examination of the assignments of error in the petition in error because it is not specifically alleged by the railroad company in its petition in error that the district court erred in overruling its motion for a new trial.   To sustain this contention we are cited, among others, to *Carson v. Funk*, 27 Kan., 524.  In that case the petition in error did not aver that the court below erred in overruling the plaintiff in error's motion for a new trial; but the petition in error did aver that "there were errors of law occurring at the trial of the case;" and the court held that, since the action of the court in overruling the motion for a new trial was not assigned as error, under the assignments in the petition in error, "there were errors of law occurring at the trial," the supreme court should not review the action of the district court in admitting and rejecting evidence or in giving and refusing to give instructions.   The case does not support the contention of the defendants in error.   Section 314 of the Code of Civil Procedure specifies the causes for which a new trial may be granted on motion of the defeated party.   Section 317 of the Code provides that in assigning the grounds in a motion for a new trial it shall be sufficient to assign the same in the language of the statute.   We do not understand this section of the Code to be mandatory, and though the grounds of a motion for a new trial are not stated in the exact language of the statute, if they are in substance the same the statute is satisfied, and where the grounds of a motion for a new trial are in substance those prescribed by section 314 of the Code, and the assignments

in the petition in error are based upon those grounds, we
do not think this court is deprived of jurisdiction to re-
view the case on error simply because the plaintiff in
error does not specifically allege that the court below
erred in overruling the motion for a new trial.

3. The issues made by the pleadings in the case at bar
were: (1.) Whether any part of the west half of the rail-
road company's bridge was in said school district No. 2.
This was an issue of fact.   (2.) Whether the railroad com-
pany, by voluntarily listing the west half of the bridge
for taxation by the school district in the year 1895, and
prior years, had estopped itself from resisting the col-
lection of the taxes levied for 1895.   The undisputed evi-
dence shows that the railroad company did list the west
half of its bridge for taxation by the school district for
the year 1895 and prior years.   There remains, then, of
these the issue of law, whether the railroad, because of
its conduct in the premises, is estopped from resisting
the collection of the taxes in suit.   The third issue made
by the pleadings was also one of law, viz., whether the
remedy of the railroad company, if it had any, was limited
to *quo warranto* proceedings.   The court found generally
against the railroad company, and specially that the west
half of the railroad company's bridge was situate in said
school district No. 2.   The petition in error alleges that
the court erred in finding that the west half of the bridge
was situate in said school district No. 2; that such find-
ing was not sustained by sufficient evidence; that the
court erred in entering the decree it did because such
decree was contrary to law.   In its motion for a new
trial the railroad company alleged that the court erred
in finding that the west half of its bridge was situate in
said school district No. 2; that its finding in that respect
was not sustained by sufficient evidence; that the court
erred in rendering the decree it did because such decree
was contrary to law.   The defendants in error now in-
sist that this decree must be affirmed without an ex-
amination of the assignments of error in the petition in

error because these assignments are not based on grounds specified in the motion for a new trial. We think the contention is without merit. While the motion for a new trial is not in the exact language of the statute, the grounds of the motion for a new trial are the same in substance as those specified in section 314 of the Code and the assignments of the petition in error follow the grounds alleged for a new trial. But it is said in this connection that there were other issues in the case besides the one as to whether the west half of the railroad company's bridge was in school district No. 2; and since the court found generally for the defendants in error, his judgment may be based on finding some of these other issues in favor of the defendants in error; and that if the judgment of the court is based on finding the other issues in favor of the defendants in error, the sufficiency of the evidence to sustain such findings of the court is not called in question by the motion for a new trial. The answer to this is that the other issues were issues of law, not of fact, and the motion for a new trial and the petition in error both allege that the judgment pronounced was erroneous because it was contrary to law.

4. Another contention of the defendants in error is that the decree of the district court must be affirmed because the petition filed by the railroad company in the district court does not state a cause of action. The first argument in support of this contention is that the facts averred in the petition of the railroad company show that its remedy, if it has one, is a *quo warranto* proceeding. To sustain this contention counsel for the defendants in error cite us to *South Platte Land Co. v. Buffalo County*, 15 Neb., 675. That was an action to enjoin the collection of certain taxes assessed by the city of Kearney upon lands belonging to the South Platte Land Company and included within the limits of said city. It seems that the lands had been taken into said city in 1866 and when so taken were unplatted; and that under the town site act of 1866 the county commissioners of Buffalo county, who

incorporated the city of Kearney, had no authority to include within its limits unplatted land. But the court held that the action of the county commissioners in taking the unplatted lands into the city limits, while erroneous, was not a void act; that the action of the commissioners in placing said unplatted lands within the limits of Kearney could not be reviewed in a proceeding to enjoin the collection of the taxes levied on said lands. But that case is not an authority for the contention here. There was no dispute in that case but that the unplatted lands of the South Platte Land Company were within the boundaries of the city of Kearney and a part of said city, and the correctness of the action of the board of commissioners in establishing said boundaries could not be tried in a collateral proceeding brought to enjoin the collection of taxes on lands within the boundary limits. To the same effect see *Sage v. City of Plattsmouth*, 48 Neb., 558. When one claims that his land is illegally included within the boundary of a city or village, doubtless *quo warranto* is a proper remedy. (See *State v. Dimond*, 44 Neb., 154, and *State v. Mote*, 48 Neb., 683.) But the railroad company here does not claim that its bridge, or the land on which it stands, is illegally or otherwise included within the corporate limits of school district No. 2. Its claim is that the officers of this school district went outside of its corporate limits and assessed the property in controversy. If the district court, therefore, based its decree in this case upon a finding of law that the remedy of the railroad company here was by *quo warranto* proceedings, that finding is wrong. A second argument in support of the contention that the petition does not state a cause of action, is, in effect, that the petition does not allege that the taxes sought to be enjoined were levied or assessed for an illegal or unauthorized purpose within the meaning of section 144, article 1, chapter 77, Compiled Statutes, and, therefore, the court is without jurisdiction to entertain an action to enjoin the collection of these taxes; that the railroad company must pay the

taxes under protest and then recover them back by pro-
ceedings pointed out in said chapter. But the district
courts of this state are by the constitution invested with
general equity jurisdiction, and this jurisdiction the legis-
lature can neither take away nor impair. It must be
remembered that this action is not based upon the theory
that the tax sought to be enjoined is erroneous because
of some irregularity in the manner of its assessment; but
the tax is assailed as absolutely void upon the ground
that the property upon which it is levied was not within
the jurisdiction of the school district which imposed the
tax. A case almost identical in principle with the one
at bar is *Touzalin v. City of Omaha*, 25 Neb., 817. In that
case Touzalin owned some lots between Twenty-seventh
and Twenty-eighth streets, in the city of Omaha, bounded
on the south by California street. The city ordered this
California street to be graded from Twenty-second to
Twenty-sixth street and a tax levied upon abutting prop-
erty to pay the cost of such grading. The ordinance did
not provide that California street should be graded be-
tween Twenty-seventh and Twenty-eighth, where Touza-
lin's property was located, but nevertheless the city au-
thorities assessed a tax upon Touzalin's property to pay
for grading the street. Touzalin then brought suit to
enjoin the collection of these taxes. The district court
dismissed the petition and Touzalin appealed. In this
court the point was made by the attorney for the city that,
since the taxes were not levied for an illegal or unauthor-
ized purpose, the district court had no jurisdiction to
enjoin their collection; that Touzalin's remedy was to
pay them under protest in accordance with the provisions
of chapter 77, Compiled Statutes. This court overruled
that contention, and said: "Injunctions to prevent the
collection of taxes are not favored and should only be
granted where the relief at law is wholly inadequate. If,
however, the tax is void,—in other words, is levied with-
out authority of law,—the forms of law nevertheless be-
ing used to cast a cloud upon the title of the party's real

estate and thereby diminish its value, the power of the legislature to close the doors of the courts to aid the taxpayer is very doubtful. A void tax is no tax. How then can the statute debar the taxpayer from enjoining the unlawful sale of his property to pay such alleged taxes?" And it was held that since the property of Touzalin was outside the district which the ordinance of the city of Omaha ordered graded that the taxing authority had no jurisdiction to levy a tax upon it to pay the cost of such grading and that a tax so levied was absolutely void, and that the court, notwithstanding the statute, had jurisdiction to enjoin it. To the same effect see *Bellevue Improvement Co. v. Village of Bellevue*, 39 Neb., 876; *Chicago, B. & Q. R. Co. v. Nemaha County*, 50 Neb., 393. If, then, the allegations of the petition are true, viz., that no part of the west half of the railroad company's bridge is within the limits of said school district No. 2, the officers of that district had no jurisdiction or authority to levy the tax in question, as their jurisdiction to levy taxes upon real estate for school purposes was and is limited to the real estate within the corporate boundaries of their school districts, and the district court, notwithstanding the statute, had jurisdiction to enjoin the sale of this property for such tax.

5. Section 8, subdivision 3, chapter 79, Compiled Statutes, provides: "Every school district shall, in all cases, be presumed to have been legally organized when it shall have exercised the franchises and privileges of a district for the term of one year." Another contention of the defendants in error is that the decree of the district court must be affirmed, because the undisputed facts in the record show that school district No. 2 has existed as a school district and exercised the franchises and privileges of one since the year 1869, and that for several years prior to the levy of the tax sought to be enjoined in this action it had been levying taxes for school purposes upon this identical property, and, if we understand counsel, they deduce from these facts the

proposition that the courts must conclusively presume not only that school district No. 2 is legally organized, but that the west half of the railroad bridge is within its boundaries.   In support of this contention counsel cite us to the section of the statute just quoted and to *State v. School District*, 42 Neb., 499.   Neither the statute nor the case sustains counsel's contention.   This is not an action which calls into question the legality of the organization of school district No. 2; and if it can be said that jurisdiction and authority to levy taxes are a franchise and privilege within the meaning of said section 8, and that this action calls into question the right of said school district to exercise such a franchise and privilege, still the statute requires the courts to presume nothing further than the legal organization of the school district.   By this statute the court is not required to presume that any piece of land is within or without the limits of such a school district.   By the pleadings in this case the *situs* of the railroad bridge is made a question of fact.

6.  As already stated, the court found generally against the railroad company, and one of the issues made by the pleadings was that the railroad company had voluntarily listed the tax sought to be enjoined in the year 1895, and for prior years, and that by reason of its conduct in that respect it was estopped from maintaining this action. The undisputed evidence in the record is that the taxing officer of the railroad company in 1895 listed with the officers of school district No. 2 the west half of its railroad bridge; that he had so listed it for some years prior to that time.   For the purpose of the argument under consideration, and for that purpose only, we assume that the district court based its decree upon a finding made by it that the railroad company had estopped itself to maintain this action by reason of its conduct in listing its property in 1895 and prior years.   If the court did so find, was its conclusion correct?   *State v. Baker*, 31 S. W. Rep. [Mo.], 924, is a case in point.   In the year 1872, and prior to that time, Baker owned a piece of land in Mis-

sissippi county, Missouri. The legislature of Missouri in that year changed the boundary line between the counties of Mississippi and New Madrid. This change put Baker's land in New Madrid county. It seems that for some years subsequent to this time Baker listed his land as being in New Madrid county and paid the taxes thereon. Subsequently he resisted the payment of a tax levied by the authorities of New Madrid county, on the ground that the act of the legislature of 1872, changing the boundary line between Mississippi and New Madrid counties, was unconstitutional, and therefore his land was not, and never had been, in New Madrid county. It was urged that Baker had estopped himself to maintain the action because of his listing his land with the county authorities of New Madrid county and paying taxes thereon, and because he had represented to the county authorities of New Madrid county that his land was in that county by listing it for the very taxes he was then resisting; but the court said that there was no principle of estoppel in the case; that Baker's listing his land as in New Madrid county was the result of a mistake of fact upon his part. In *Town of Clinton v. Town of Haddam,* 50 Conn., 84, the authorities of the town of Haddam received a notice from the authorities of the town of Clinton that a pauper belonging to the former town was on expense in the latter town. The authorities of Haddam, believing in fact that the pauper belonged to their town, wrote the authorities of Clinton, requesting them to be economical as possible in the matter and promised to pay for the pauper's support. Four years afterwards, the pauper again needing aid from the town, the authorities of Haddam were notified of the fact and the supplies were furnished by the town of Clinton. During all this time the authorities of Haddam believed that the pauper belonged to their town and conceded this to the authorities of Clinton, who by reason of this fact took no steps to investigate the matter or to hold any other town responsible. The means of knowledge were equally open

to both towns.   In a suit brought by the town of Clinton
against the town of Haddam for the supplies last fur-
nished the pauper the court held that the town of Had-
dam was not estopped from showing that the pauper was
not legally chargeable to it.   The court based its decision
upon the ground that a party is not estopped by an ad-
mission made in ignorance of his rights when the admis-
sion was the result of an innocent mistake of a material
fact.   *Chicago N. W. R. Co. v. Auditor General*, 18 N. W.
Rep. [Mich.], 586, is another authority in point here.   The
case is too long for review, and we content ourselves with
quoting the syllabus: "Where a railway company makes
out a report of earnings to present to the state for taxa-
tion, no error or want of fullness in the report can be
made a ground of estoppel to prevent the company from
disputing the propriety or legality of an assessment based
upon such report, unless fraud or bad faith be alleged."
See, also, as applicable to the point under consideration,
*Parke County Coal Co. v. Campbell*, 39 N. E. Rep. [Ind.],
149; *Lee v. Templeton*, 73 Ind., 315.   In the case at bar
the evidence shows that the tax agent of the railroad
company listed the west half of this bridge for taxation
in said school district No. 2 because he erroneously be-
lieved that said half of the bridge was in the boundary
limits of said school district.   His mistake was a mistake
of fact.   It is neither pleaded nor proved by the defend-
ants in error that any of them believed that the bridge
was in fact within the limits of school district No. 2; nor
that they believed the statement of the tax agent, if he
made one, that it was within the limits of said district;
nor that they changed their status in any respect by
reason of the tax agent so listing the property.   All that
appears is that the tax agent so listed the property as
being in school district No. 2; that he did this because
of a mistake of fact as to the actual location of the bridge
and that the mistake was innocently made; but it does
not appear that the school district was in any manner
prejudiced by such listing or representation of the rail-

road company's tax agent, and we conclude, therefore, that the conduct of the railroad company in listing its property as being in school district No. 2 in the year 1895, and prior years, does not estop it from maintaining this action; and if the court based its decree upon a finding of law made by it, that the company was estopped by reason of its conduct in the premises, the decree is contrary to law.

7. We come now to the consideration of the correctness of the finding of fact made by the district court that the west half of the railroad company's bridge is within the limits of said school district No. 2. We take judicial notice of the fact that the Missouri river is a navigable stream. The middle of its channel is the eastern boundary of the state at the point where the railroad company's bridge crosses the Missouri river from Iowa into Cass county. (Enabling Act, sec. 2; 13 United States Statutes at Large, p. 47, sec. 2.) The eastern boundary of Cass county, where it is crossed by said bridge, is the middle of the channel of the Missouri river. (Compiled Statutes, ch. 17, art. 1, sec. 10.) The evidence shows, without conflict, that school district No. 2 is in Cass county and composed among others, of section 20, in township 12 north, and range 14 east of the Sixth P. M.; that this section is fractional; that the road-bed is constructed over a part of the northwest quarter of the northwest quarter of said section to the bank, bluff, or high-water line of the river, and there joins the west end of the railroad bridge. The following plat will assist us in understanding the question at issue, viz., whether the west half of the railroad bridge in question is within the limits of said school district No. 2:

COPIED FROM EVARTS AND KIRK MAP 1885;

The evidence, without contradiction, also shows that the United States surveyed and platted this section 20 and other sections of land next to the river in the same township; that this section 20 was surveyed and platted as a fractional section, as shown on the foregoing plat; that in making the survey the United States followed the meanderings of the river at the crest of the river bank, or at high-water line; that no land east of the crest of the bank or bluff or high-water line was by the survey or plat made by the United States included in said section 20, and that no part of the bridge of the railroad company is on any part of said section 20, as surveyed and platted by the United States; that the western bank of the river where the bridge crosses is a steep bluff some 80 feet.high; and that about 120 feet of the west end of the bridge spans a space between low and high water mark. The contention of the defendants in error is that the eastern boundary of school district No. 2, where crossed by the bridge, coincides with the eastern boundary of the state and Cass county, viz., is the middle of the channel of the river,—in other words, that the eastern boundary of said section 20 is the middle of the channel of the river,—whereas the evidence shows that the United States made the eastern boundary of said section 20 the crest of the west bluff of the river. The statutes of this state, since February, 1869, have provided, in effect, that the superintendent of schools of each organized county should divide his county into school districts. (General Statutes, 1873, ch. 68, sec. 1.) The evidence further shows that the county superintendent of Cass county, in 1869, divided that county into school districts, and that school district No. 2 of this record was constituted of certain named sections of land, among others, said section 20. Suppose said school district No. 2 had been and was now composed of only said section 20, where would be its eastern boundary? A school district is the territory under the jurisdiction of a single school board. (Compiled Statutes, ch. 79, subdiv. 1, sec. 1.) Jurisdic-

tion, as used in this section of the statute and applied to the facts in litigation here, means the power and authority to levy taxes upon property within the limits of the school district for school purposes. Possibly the county superintendent of Cass county, in dividing his county into school districts, might have made the eastern boundary of the school district coincide with the eastern boundary of the county. But the eastern boundary of section 20, as surveyed and platted by the United States, is not the middle of the channel of the Missouri river, is not the low-water line of said river, but it was and is the crest of the west bluff or bank of the river,— in other words, the high-water line. From the evidence in the record before us we are constrained to the conclusion that the eastern boundary of said school district No. 2, at the point where touched by the railroad bridge, is the eastern boundary of said section 20 as surveyed and platted by the United States, and that this latter boundary line is the crest of the river bluff or high-water line, and that, therefore, no part of the west half of the railroad bridge is in said school district No. 2. In the absence of express legislative authority, the officers of a school district are without jurisdiction to lay a tax upon real estate not within the limits of their school district, and a tax so levied, no matter for what purpose, is absolutely void. We have not overlooked the suggestion of counsel for the defendants in error that this bridge is personal property; but we do not see how the determination of the question as to whether the bridge is real or personal estate is important here. The question involved in this case is not what is the character of this property, but where is it situate? If it be conceded that the bridge is personal property, its *situs* or situation is not within the limits of this school district, either actually or constructively.

Counsel for defendants in error, in support of their contention of the right of the school district to assess the west half of the bridge in controversy, cite us to *St. Louis*

29

*Bridge Co. v. City of East St. Louis*, 12 N. E. Rep. [Ill.], 723.
In that case the right of the city of East St. Louis to
tax, for municipal purposes, one-half of the bridge across
the Mississippi river at that point was sustained. The
bridge company resisted the taxes levied by the city of
East St. Louis on the ground that the city did not furnish
the bridge company fire and police protection and lights,
etc.,—in other words, that it received no benefits from the
taxes paid to the city,—and it therefore claimed to be
exempt from municipal purposes; but the court based its
decision upon the fact that the western boundary of the
city of East St. Louis, as fixed by its charter, was the mid-
dle of the channel of the Mississippi river, and that, there-
fore, the eastern half of the bridge was within the limits of
East St. Louis. *Henderson Bridge Co. v. City of Henderson*,
14 S. W. Rep. [Ky.], 85, is another case very much like the
St. Louis bridge case. There it was held that the city
of Henderson had a right to tax the bridge across the
river at that point, not only to the middle of the channel
of the Ohio river, but to tax all that part of it extending
from Kentucky to the low-water line of the river on the
Indiana side, and that decision, it seemed, was based
upon the ground that by some charter or grant the cor-
porate limits of the city of Henderson extended not only
to the middle of the channel of the Ohio river, but ex-
tended to the low-water line of the river on the Indiana
side. But we have not been able to find any case where
any court has ever held, in the absence of an express
statute authorizing it, that a municipality or school dis-
trict had authority to levy a tax upon real estate outside
of its limits, nor do we think any such a case can be
found. We must not be understood from anything said
in this opinion as deciding anything in reference to the
riparian or littoral rights of the owner of said section 20,
or of any other piece of land whose boundary is the Mis-
souri river. We do not decide whether the owner of that
part of section 20 lying next to the Missouri river has
any title or may exercise any rights as riparian owner

over any part of the soil lying east of the high-water or bluff line of the Missouri river. That question is not presented by this record. The owner of lands bounded by a navigable stream, because of the fact that he is a shore proprietor, may have certain rights over the soil below the high-water line of such stream and in the waters thereof; but it does not necessarily follow because the proprietor is invested with these rights and privileges below high-water line that he owns the fee-simple title to the soil below that line. The fee-simple title to the soil is one thing, riparian rights over that soil is another and a very different thing. Decree reversed and cause remanded.

REVERSED AND REMANDED.