LEVI MORRILL, In Equity, *vs.* JAMES L. LOVETT.

Cumberland.    Opinion March 28, 1901.

*Taxes.    Assessment.    Heirs and Devisees.    R. S., c. 6, §§ 24, 27.    Stat. 1826, c. 337, § 4.*

Harriet J. Morrill, of Boston, the owner in her lifetime of the real estate in question, died in 1889. The real estate had been assessed to her up to the time of her death. Afterwards, in 1890 and 1891, the assessors continued to assess taxes on this real estate to Harriet J. Morrill as a non-resident owner. For non-payment of these taxes the property was sold at tax sale. The defendant is the grantee of the purchaser at the tax sale. The complainant is the devisee of Harriet J. Morrill.

*Held;* that the taxes assessed to Harriet J. Morrill after her death were utterly void, and that the tax sale and deed and the deed to the defendant constitute a cloud upon the title of the complainant.

*Held;* further, that, inasmuch as the taxes were entirely void, the owner was under no duty to pay them, and hence that there is no reason in equity for requiring the owner to reimburse the defendant, as a condition to having the cloud upon his title removed.

*Held;* that the complainant is entitled to a decree below by which the tax deeds and conveyances, under which the defendant claims, shall be declared to be null and void, and the defendant, and all persons claiming by, through or under him shall be perpetually enjoined from asserting any title under such deeds and conveyances, and from making any entry upon the real estate in question, and from in any manner disturbing the title or possession of the complainant.

On report.

Bill to remove cloud on title.    Bill sustained.

*Wm. M. Payson; F. C. Payson and H. R. Virgin,* for plaintiff.
*B. D. and H. M. Verrill,* for defendant.

SITTING :   WISWELL, C. J., WHITEHOUSE, STROUT, SAVAGE, FOGLER, JJ.

SAVAGE, J.   Bill in equity to remove a cloud upon the title to certain real estate in that part of Portland which was formerly Deering.   Harriet J. Morrill of Boston, Massachusetts, who died in 1889, was seized of the premises at the time of her death.   The complainant is her devisee.   In 1890 and 1891, the assessors of Deering assessed taxes on the real estate to Harriet J. Morrill, as a non-resident owner.   At the tax sale for the non-payment of these taxes, the property was bid in on behalf of the city under the statute, R. S., chap. 6, § 203.   Later, in 1894, Deering conveyed its interest in the premises to the defendant, for the amount of the taxes and interest.

Under the allegations of the bill, the only questions open for consideration are ( 1 ), whether the assessments to Harriet J. Morrill, then dead, were void; and ( 2 ), if so, whether the complainant is equitably bound to reimburse the defendant for the purchase price paid by him and interest, as a condition precedent to having the cloud removed from his title.

I.   That a tax assessed to a dead person is void, as a general rule, is not controverted.   But prior to her death, this real estate had been assessed to Harriet J. Morrill, and this being so, the defendant contends that the assessors might lawfully continue to assess the property to her, though dead, unless and until notice was given to them of a change in ownership or occupancy.   And to support this contention, the defendant relies upon R. S., chap 6, § 27, which provides that, "When assessors continue to assess real estate to the person to whom it was last assessed, such assessment is valid, although the ownership or occupancy has changed, unless previous notice is given of such change and of the name of the person to whom it has been transferred or surrendered. . . . ." The complainant replies that this statute does not apply in cases where the change in ownership arises from the death of the owner, and the estate thereby passes to heirs or devisees.   And here issue is joined.

It is unnecessary upon this point to consider the allegations that the death of Mrs. Morrill was " generally well known " in Deering and to " many or all of the officers thereof," or that specific notice was given to the assessors in the spring of 1891, because it is neither alleged nor shown that the assessors had notice of her death previous to the assessment of 1890. " Previous notice," that is, notice previous to the assessment, is the language of the statute. And if the assessment for 1890 was valid, the defendant has obtained a good title.

Under the provisions of the statute cited, can assessors lawfully continue to assess real estate to a former owner, after death ? Is the change of ownership limited to transfers, voluntary or involuntary, by living persons, or by prescription, or does it include a change in ownership occasioned by the death of the owner? In answering these questions, it may be observed, in the first place, that the general policy of our legislation relating to taxation seems to be not only to create a lien upon real estate taxed to secure the payment of the tax, but to create a personal liability for the tax in the one to whom it has been assessed, to be enforced by arrest, distraint or suit at law. If the construction claimed by the defendant is correct, this statute is a departure from the general rule, for it is clear that the assessment of a tax to a dead person upon real estate formerly owned by him is purely in rem. We do not doubt, however, that the legislature has power to provide for the assessment of such a tax. The question here is simply whether it has done so.

Again, we shall be aided if we can ascertain the precise purpose of this statute. In the absence of statutory modifications, a tax assessed to one not the owner was void. The law encouraged the free and easy transfers of real estate. Title might, and frequently did, pass from one to another without any change in the indicia of ownership, and conveyances were valid without being recorded, so far as taxation was concerned. To compel the assessors to inquire into the existence of voluntary changes in ownership, at the peril of making void assessments, would be intolerable, and would afford one thus inclined too easy a method of avoiding the payment of a

tax. It was good policy, then, to declare an owner liable to taxation until he had given notice of a transfer. But the reasons for the statute which we have stated, if they exist at all in change of ownership by death, exist only to a slight degree. The distinction is marked. Transfers by living owners are private transactions, not necessarily known to any but the parties themselves. But death, particularly the death of a land proprietor, is ordinarily a matter of local notoriety, at least. And the cases are rare indeed, when the fact of such death, and consequent change of ownership, is not easily ascertainable, or is not, in fact, known by the assessors within the term of their service, and while they may still correct an assessment to a dead person by a supplemental one. *Rockland* v. *Ulmer*, 87 Maine, 357.

Again, provision is made elsewhere for the assessment of real estate which has belonged to a person now deceased. Recognizing the inconvenience, or perhaps ·impossibility, of ascertaining correctly and seasonably the names of heirs or devisees, the statute provides that the assessment may be made to the heirs or devisees, as the case may be, without designating any of them by name, until notice is given of a division and of the names of the several heirs or devisees. R. S., Chap. 6, § 24. This provision seems to be ample for the convenient and legal assessment of taxes when change of ownership is occasioned by death.

On general principles, the assessment of a tax against a dead man would seem to be something of an anomaly even in tax proceedings,—and, if authorized by statute, much more so. WALTON, J., in *Elliot* v. *Spinney*, 69 Maine, 31, said: "To allow real estate to be taxed to devisees when there are none, or to heirs, when in law and in fact there are none, would be to allow it to be taxed to nonentities, a result which we cannot believe the legislature intended." So, in like manner, an assessment of a tax to a dead man is assessing it to a *nonentity*. We do not think it is authorized. And if the reasons already given are not sufficient, further light can be had by an examination of the language of the statute itself. The assessors may continue to assess the real estate to the "person" to whom it was last assessed. The natural and obvious

signification of the word "person" in a statute is a living being. When the statutes speak of one who is dead, they speak of him as a "deceased person," or a "person deceased." Such is the appropriate definition of the word "person" in *Sawyer* v. *Mackie*, 149 Mass. 269, a case involving the same question which we are now considering. It is to be noted that the statute, in providing for notice of the change of ownership, requires also notice of the name of the person to whom the property had been "transferred or surrendered." We think these words imply a change of ownership by the act of the owner, or by a statute sale, rather than a change by death. An examination of the form in which this statute was first enacted, Public Laws 1826, chap, 337, § 4, also tends to confirm our conclusions in this respect. The language then used respecting the notice was, "unless previous to making the assessment, the owner or occupant to whom the same was assessed in the last preceding assessment, shall give to the assessors, or one of them, notice, stating the time when he ceased to be owner or occupant, of such estate, and the name of the person to whom the same was transferred or surrendered." By condensation, the form of the statute has since been changed, but not the meaning. And we think it clearly shows that the legislative mind contemplated a change in the lifetime of the owner, a notice to be given by the owner himself.

We are of opinion, therefore, that the operation of section 27 is limited to transfers made in the lifetime of the owner; while section 24 prescribes the rule in case of change of ownership by death. The two provisions together cover the whole ground.

Accordingly, it must be held that the assessments complained of were utterly void, and that the tax title under which the defendant claims constitutes a cloud upon the complainant's title.

II. Does equity require the complainant as a condition to relief, to reimburse the defendant to the amount of the taxes and interest paid by him? We think not. When a tax has once been assessed so as to create a lien upon the real estate, or make it the duty of the owner to pay the tax, and when by informality or error in procedure the lien has become lost, or the sale for the non-payment

was invalid, or the owner is not compellable by law to pay, there are the strongest equitable reasons why the owner should be held to pay the tax, or reimburse the one who did pay it, before he can have relief from the cloud created by a tax sale. Notwithstanding the informalities and irregularities in procedure, it is still the duty of the owner to pay the tax. It would be inequitable for him to escape payment, and "he who asks equity must do equity."

But that is not this case. These taxes were utterly void. They never had any effect. They never created any lien or raised any obligation to pay. A void tax is no tax. It is as if there never had been any attempt at assessment. The owner is under no duty either at law or in equity to pay it. Hence, there is no equitable reason for requiring the owner to pay such a tax before a cloud upon his title made by a tax sale shall be removed. In Cooley on Taxation ( 2nd Ed. ) 183, the learned author says: — "It is proper, in vacating a tax, or a sale for taxes, as a cloud upon title to require the party to pay any sum that is either a legal or equitable charge against him, and which will be affected by the decree. If the tax were wholly illegal in its essentials, of course, no such requirement could be made, for no equity would support it." The reasoning of WALTON, J., in *Belfast Savings Bank* v. *Kennebec Land and Lumber Co.*, 73 Maine, 404, supports the same conclusion. See *Davis* v. *Boston*, 129 Mass. 377.

The complainant, therefore, is entitled to relief. By decree below, the tax deeds and conveyances, under which the defendant claims the real estate described in the bill, will be declared to be null and void; and the defendant and all persons claiming by, through or under him should be perpetually enjoined from asserting any title under such deeds and conveyances, and from making any entry upon such real estate, and from in any manner disturbing the title or possession of the complainant in and to such real estate.

*Bill sustained with costs.*
*Decree in accordance with opinion.*