[No. 25693. *En Banc.* July 9, 1935.]

ESTELLE BALLARD *et al., Appellants,* v. MELVIN S.
WOOSTER, *as Assessor for King County,*
*Respondent.*

SEATTLE MEDICAL ARTS BUILDING COMPANY, *Appellant,*
v. MELVIN S. WOOSTER, *as Assessor for King*
*County, Respondent.*[1]

*John F. Reed* and *Bayley & Croson,* for appellants.
*Warren G. Magnuson* and *David J. Williams (M. H.*
*Ingersoll,* of counsel), for respondent.

HOLCOMB, J.—Ten cases in all were brought in King
county involving substantially the same tax questions.
It was stipulated by their attorneys and the attorneys
for respondent, as county assessor of King county,
that the two above entitled cases be consolidated for
hearing, for the reason that they represent the two
groups of cases involved in all the tax cases then pend-
ing in the lower court.

The first case, which we will refer to as the Ballard

[1]Reported in 45 P. (2d) 511.

case, is typical of that group of cases where the matter was presented to the King county equalization board, and an appeal taken from that board to the state tax commission, and suits in the lower court instituted after the decision of the state tax commission. The second group of cases, which will be referred to as the Medical Arts Building case, represents that group of cases where the matter of valuation was not presented to the King county equalization board or to the state tax commission, but taken directly into court.

In all of the actions, it is alleged that the county assessor threatens to and is about to enter and, unless restrained, will enter upon the assessment roll the valuations as fixed by the county and state equalization boards; that, if such excess valuations be placed upon the tax rolls and tax levies based thereon are made, clouds will be cast upon the titles of the properties in the amount of such excess valuation. All of them prayed for decrees enjoining the county assessor from entering such valuations upon the real estate and improvements on any of his tax records, and from using any valuation in excess of their own valuation for any purpose in connection with any of the steps to be taken by the assessor in respect to the assessment or valuation of such properties.

Respondent demurred to each of the complaints and moved to set aside the temporary restraining orders theretofore granted, and filed affidavits in support of the motions to dissolve the restraining orders, which are uncontradicted. The affidavits made by the assessor (now Mr. Meisner, succeeding Mr. Wooster, former county assessor) in each case depose:

"That the records of his office show that on December 13, 1934, at the time that said complaints and orders to show cause in the above consolidated cases were served upon the assessor, every single act required by the assessor, to be performed having to do

with the properties involved in said causes, in the preparation of the rolls for transmission to the auditor of King County, in conformance with the laws of the State of Washington, had been performed, except the signing by the assessor of a certain instrument in the form set forth in R. R. S. Sec. 11240.''

The uncontradicted record submitted by respondent also shows that the county assessor listed and assessed the property between February 1 and May 31, 1934, in compliance with Rem. Rev. Stat., § 11140 [P. C. § 6882-57], and certified his rolls to the county board of equalization on the first Monday in July, 1934, according to Id., § 11148 [P. C. § 6882-65]; that the state tax commission completed assessments of railroad and telegraph properties and certified the same by July 1, according to Id., § 11164 [P. C. § 6882-43]; that the county board of equalization convened the first Monday in July and adjourned two weeks later, Id., § 11220 [P. C. § 6882-68]; that, by the first Monday in August, the assessor sent copies of the abstract of assessed valuations, as corrected by the county board, to the state board of equalization, pursuant to Id., § 11220 [P. C. § 6882-68]; that three plaintiffs appealed to the state board, pursuant to Id., § 11092 [P. C. § 6874-6] within ten days; that the state tax commission on the first Tuesday of September made and equalized the assessment rolls as required by law, pursuant to Id., § 11222 [P. C. § 882-70], and certified the same to the state auditor; that the state auditor within three days after receiving the same, which included the levy by the state board for state purposes, transmitted to the county assessor the transcript of the proceedings of the state board, together with the amount of state taxes to be levied in King county, as prescribed by Id., § 11223 [P. C. § 6882-71]; that, upon receipt of the certificate of the state tax commission, the county assessor certified to the board of county commissioners the

total assessed value of the property within King county as shown by the balanced and completed roll, as prescribed by Id., § 11224 [P. C. § 6882-72]; that, before the second Monday in October, the county commissioners fixed· and levied the taxes and certified to the county assessor the amount so levied upon the property in the county, pursuant to Id., § 11239 [P. C. § 6882-78]; that, thereupon and before service of any process in these cases, the county assessor extended the taxes so levied upon the tax rolls and the rate per cent necessary to raise the amount of taxes levied, which was computed upon the assessed value of the property, and all taxes so assessed against each of these properties were added together and extended on the rolls, as prescribed in Id., § 11240 [P. C. § 6882-79]; that, at the time of the service upon him, the valuations complained of in these actions, as fixed and determined by the boards of equalization, had already been entered upon every report and record of every kind and nature where, by the statutes, it is required to be entered, and nothing remained for the assessor to do with reference thereto except to certify such valuations, together with the valuations of all other properties in the county, to the county auditor.

To sum it up, there was nothing more the assessor could do or had power to do except the ministerial act of signing the three-line certificate prescribed in Rem. Rev. Stat., § 11240 [P. C. § 6882-79], certifying the same as a "correct list of taxes levied on the real and personal property in the county of King for the year," and delivering the rolls to the county auditor.

It is clear that appellants in all of these actions are seeking to enjoin the assessor from entering valuations upon any of his tax records and from using them for any purpose in connection with any of the steps to be taken in respect to the assessment or valuation of their

properties, and are attempting to enjoin the assessor from doing acts which had already been done.

After the certification of equalization by the state board of equalization to the county assessor, the final act of fixing the tax levy is completed, and not until then. *State ex rel. Showalter v. Cook,* 175 Wash. 364, 27 P. (2d) 1075. Thence on, the county assessor is only a ministerial officer, having no power to extend any tax on the tax rolls except that fixed in the last completed tax roll as equalized by the state board. *State v. Wiley,* 176 Wash. 641, 30 P. (2d) 958. The only errors that can then be corrected are those permitted by Rem. Rev. Stat., § 11241 [P. C. § 6882-80], correcting errors in description, double assessments, or manifest errors in assessments appearing on the assessment list at the time of the extension of the tax rolls and limited in the manner pointed out in that section.

Appellants in these cases rely largely upon our decisions in *Denny v. Wooster,* 175 Wash. 272, 27 P. (2d) 328, and *Pacific Telephone and Telegraph Co. v. Wooster,* 178 Wash. 180, 34 P. (2d) 451, to the effect that injunction is a proper remedy in such cases as theirs.

On the other hand, respondent relies chiefly upon chapter 62, Laws of 1931, p. 201 (Rem. Rev. Stat. §§ 11315-1 to 11315-8 [P. C. §§ 6882-189 to 6882-205]), and our decision sustaining that law in *Casco Co. v. Thurston County,* 163 Wash. 666, 2 P. (2d) 677, 77 A. L. R. 622.

In the *Denny* case, *supra,* the tax was assailed as being illegal because in excess of the forty-mill-limit law of 1933. It was there held that chapter 62 of the Laws of 1931, p. 201, and the *Casco* case, *supra,* did not govern, because it was not claimed in the *Casco* case that the tax was void or the property exempt from execu-

tion, but that the property was so grossly overvalued for taxation purposes that it resulted in a greatly excessive tax. That case was therefore well within the statutory rule against injunctive relief.

There is nothing to the contrary in the *Pacific Telephone & Telegraph Co.* case, *supra.* There, the county board of equalization had unlawfully made a void assessment, after final action by the state board. This, of course, was a wholly unauthorized and void act, and, as stated in the decision therein, the plaintiff brought that action to enjoin the assessor from spreading on the assessment rolls the increased, illegal valuation ordered by the county board of equalization.

In the present cases, appellants make no attack upon the law, nor do they contend that any law under which the taxing officers were acting is void. They merely contend that the taxing officers, in assessing their properties, have, in part, violated the law. This, of course, does not result in a void tax, such as was involved in the *Denny* case, *supra.* A void tax is no tax. *Morrill v. Lovett,* 95 Me. 165, 49 Atl. 666, 56 L. R. A. 634.

There is a wide difference between an assessment and a levy. See *State v. Snohomish County,* 71 Wash. 320, 128 Pac. 667, and the *Showalter* case, *supra.*

All these appellants are attempting to enjoin levies already made under our statutes. Moreover, they are attempting to have reduced what they consider excessive or exorbitant levies for which they have complete remedies at law in Rem. Rev. Stat., § 11315-1 [P. C. § 6882-189], *et seq.,* and our decision in the *Casco* case, *supra.*

Equity does not intervene when there is a complete and adequate remedy at law.

The judgments are affirmed.

ALL CONCUR.