[No. 27539. Department Two. November 29, 1939.]

PETROLEUM NAVIGATION COMPANY, *Respondent,* v. KING COUNTY *et al., Appellants.*[1]

[1]Reported in 96 P. (2d) 467.

490

*B. Gray Warner* and *Lloyd W. Shorett,* for appellants.

*Allen, Froude & Hilen,* for respondent.

JEFFERS, J.—This is an appeal by King county *et al.,* defendants, from a judgment entered on the 21st day

of January, 1939, in favor of Petroleum Navigation Company, a corporation, plaintiff, whereby personal property taxes levied by defendants for the years 1933 and 1934 against the vessel "Aleutian Native" were declared illegal and void, and defendants were ordered to cancel such taxes, and were also restrained and enjoined from collecting same.

Plaintiff's complaint, in so far as material, alleges: That, on June 14, 1932, and up until about September 12, 1934, the Kanaga Ranching Company, an Alaska corporation, with its principal place of business at Kanaga Harbor, Alaska, was the owner of the vessel "Aleutian Native;" that, on June 14, 1932, the Kanaga Company entered into a conditional sale contract with plaintiff, wherein it agreed to sell, and plaintiff agreed to buy, the boat in question; that in the agreement was a clause reserving title in the seller until the full contract price had been paid; that the contract was not paid in full until about September 12, 1934, at which time a bill of sale of registered vessel was delivered to plaintiff and recorded with the collector of customs at Juneau, Alaska; that, during all of such period, the registry of the vessel and the designated home port remained at Juneau, Alaska; that, subsequent to the execution of the agreement, the vessel was delivered to plaintiff and was used in continuous voyages as a carrier of petroleum products in intrastate and interstate commerce; that the vessel was not present within the territorial limits of King county on either the 1st day of March, 1933, or the 1st day of March, 1934; that, notwithstanding the above facts, the assessor of King county, in 1934, purporting for the first time to have discovered the "Aleutian Native" within the limits of King county, assessed the boat for the year 1934, in the value of fifteen thousand dollars, and placed a like assessment for the year 1933, upon the basis of an

omitted assessment; that defendants have issued a final warning to plaintiff that, unless the sum of $1,755.70, taxes for the two years in question, is paid, they will immediately issue a distraint order against the boat and proceed to sell it to satisfy the taxes, unless restrained by the courts.

Defendants, by their answer, admit that the boat in question was in the possession of plaintiff on or about June 14, 1932, and that the vessel was assessed in the amount alleged in the complaint, but deny the other material allegations of the complaint.

After a trial to the court, findings of fact were made and entered wherein, briefly stated, the court found that, during the years 1933 and 1934, title to the "Aleutian Native" was in the Kanaga Company, whose domicile was at all times in the territory of Alaska; that the vessel did not, during the years 1933 and 1934, acquire an actual situs for the purpose of taxation in King county and was not subject to assessment and taxation by the taxing officer of King county for the years in question. Conclusions of law and judgment were entered, canceling the tax and enjoining defendants from further attempted collection. This appeal followed.

Appellants' first contention is that this action will not lie to restrain the collection of a tax, because of the provisions of Laws of 1931, chapter 62, p. 201 (Rem. Rev. Stat., §§ 11315-1 to 11315-8 [P. C. §§ 6882-189 to 6882-196]). Respondent, on the other hand, contends that the taxes in question are absolutely void, it appearing from the complaint that the attempted assessment was on property without the jurisdiction of King county; that, this being true, it is the same as no tax; and that § 11315-1, *supra,* does not apply to or prohibit the granting of injunctive relief from a void tax.

We think it will be admitted that, if respondent's contention relative to a void tax be true, the complaint alleged facts sufficient to give the court jurisdiction.

Rem. Rev. Stat., § 11315-1 [P. C. § 6882-189], provides:

"Injunctions and restraining orders shall not be issued or granted to restrain the collection of any tax or any part thereof, or the sale of any property for the non-payment of any tax or part thereof, except in the following cases:

"(1) Where the law under which the tax is imposed is void; and

"(2) Where the property upon which the tax is imposed is exempt from taxation."

Rem. Rev. Stat., § 11315-2 [P. C. § 6882-190], provides:

"*Prepayment under protests, condition precedent.* In all cases of the levy of taxes for public revenue which are deemed unlawful or excessive by the person, firm or corporation whose property is taxed, or from whom such tax is demanded or enforced, such person, firm or corporation may pay such tax or any part thereof deemed unlawful, under written protest setting forth all of the grounds upon which such tax is claimed to be unlawful or excessive; and thereupon the person, firm or corporation so paying, or his or its legal representatives or assigns, may bring an action in the superior court against the state, county or municipality by whose officers the same was collected, to recover such tax, or any portion thereof, so paid under protest: . . ."

Rem. Rev. Stat., § 11315-7 [P. C. § 6882-195], provides that this act shall be exclusive, except that it shall not be construed as preventing the defendants in any tax foreclosure proceedings from making any valid defense allowed by law to the tax sought to be foreclosed.

It is true that respondent is not attacking any law under which the purported levy was made, but it is

respondent's contention that there is no law under which the levy could have been made, and that the effect is therefore the same as though the levy had been made under a void law.

We do not understand that respondent is contending, nor do we think it could contend, that the property in question is exempt from taxation. We think the term "exemption," as used in the statute, presupposes a liability, and is properly applied only to a grant of immunity to persons or property which otherwise would have been liable to assessment. 61 C. J. 382.

Since the legislature enacted Laws of 1931, chapter 62, this court has had occasion to construe this act in at least seven different cases: *Casco Co. v. Thurston County*, 163 Wash. 666, 2 P. (2d) 677, 77 A. L. R. 622; *Bank of Fairfield v. Spokane County*, 173 Wash. 145, 22 P. (2d) 646; *Denny v. Wooster*, 175 Wash. 272, 27 P. (2d) 328; *Ballard v. Wooster*, 182 Wash. 408, 45 P. (2d) 511; *Western Machinery Exchange v. Grays Harbor County*, 190 Wash. 447, 68 P. (2d) 613; *In re Yakima Amusement Co.*, 192 Wash. 174, 73 P. (2d) 519; and *Etter v. Kronlund*, 198 Wash. 341, 88 P. (2d) 417.

In none of the cases above mentioned was the question of the applicability of chapter 62, *supra*, to a void tax directly raised. However, in three cases, reference is made to a void tax, and it is at least reasonably inferable therefrom that the court would have jurisdiction to entertain an action to restrain the collection of a void tax.

In the *Casco* case, which was the first case decided after the passage of the act in question, an action was brought to enjoin the collection of a tax assessed against certain property in Thurston county, and in the first paragraph of the opinion we find the following statement:

*"It is not claimed that the tax is void* or that the property taxed is exempt from taxation, but the basis of the action is the alleged gross over-valuation of the property for taxation purposes, resulting in a greatly excessive tax." (Italics ours.)

In *Denny v. Wooster, supra,* an action was instituted to enjoin the assessor of King county from spreading on the tax rolls a levy which it was claimed was illegal and void, and while it is true the court distinguished between the right to enjoin the collection of a tax from the right to enjoin a levy, we think some of the statements made in the opinion pertinent. We stated therein:

"It is not contended, indeed it could not well be argued, that there would be any lack of jurisdiction in the court in the absence of this statute. In *Union Trust Co. v. Spokane County,* 145 Wash. 193, 259 Pac. 9, we quoted, with approval, as being in harmony with the great weight of authority, from *Gould v. Gould,* 245 U. S. 151, as follows:

" 'In the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the Government, and in favor of the citizen.'

"Following that rule, the principle of which applies here, we must not extend the provisions of the act of 1931 against the granting of restraining orders in cases of this kind 'beyond the clear import of the language used, or enlarge their operations so as to embrace matters not specifically pointed out.' . . .

"Reliance is had on *Casco Co. v. Thurston County,* 163 Wash. 666, 2 P. (2d) 677, 77 A. L. R. 622. That case, however, was well within the statutory rule against injunctive relief, and properly marks that line of cases. It was not claimed therein *that the tax was void* or the property exempt from taxation." (Italics ours.)

In *Ballard v. Wooster, supra,* this court referred to the *Casco* case and others, and thereafter in the opinion stated:

"In the present cases, appellants make no attack upon the law, nor do they contend that any law under which the taxing officers were acting is void. They merely contend that the taxing officers, in assessing their properties, have, in part, violated the law. This, of course, does not result in a *void tax,* such as was involved in the *Denny* case, *supra.* A void tax is no tax. *Morrill v. Lovett,* 95 Me. 165, 49 Atl. 666, 56 L. R. A. 634." (Italics ours.)

It would not be contended that the court would not have jurisdiction, under Rem. Rev. Stat., § 11315-1, subd. 1, to entertain an action to grant injunctive relief, had it been alleged that the law under which the purported levy was made and tax imposed was void. Undoubtedly, the reason for allowing such relief is that any tax imposed pursuant to a void law would be absolutely void, and it would therefore be an unreasonable and useless proceeding to require that, in such a case, the tax must first be paid and then an action brought to recover it back. What, then, in effect, is the difference between a situation such as just presented, and a situation such as presented by the complaint in the instant case, where it is alleged that the domicile of the owner of the property taxed was at all times in Alaska, that the vessel never acquired a situs within the territorial limits of King county, and that therefore the tax sought to be collected is absolutely void? We can see no reason for holding that the court would have jurisdiction in the first instance, and not in the present case. We are therefore of the opinion that the court had jurisdiction to entertain this action.

The thing which the statute intended should be subject to injunctive relief is the "void tax" which would necessarily result whether the levy was based upon a

void statute or whether made without any purported statutory authority. See *Morrill v. Lovett,* 95 Me. 165, 49 Atl. 666, 56 L. R. A. 634; *Chicago, B & Q. R. Co. v. Cass County,* 51 Neb. 369, 70 N. W. 955.

We agree with appellants that no foreclosure proceeding had been started by the county such as is contemplated by § 11315-7. The only action taken by the county was its notice to respondent that distraint proceedings would be started immediately, if the taxes were not paid.

We now come to the merits of the case, and to a consideration of the question of whether or not the facts sustain respondent's contention that the title to the boat was, during the years 1933 and 1934, in the Kanaga Company, whose domicile was in Alaska, and that it never acquired a situs other than that of the domicile of the owner.

Respondent contends that, inasmuch as the findings of the trial court were not excepted to by appellants, they are bound by the findings as entered, citing *Pearson v. Gottstein Inv. Co.,* 112 Wash. 60, 191 Pac. 796. The rule announced in the *Gottstein* case was changed by rule XI, Rules of Practice, 193 Wash. 48-a, which states:

"It shall not be necessary or proper, in order to obtain appellate review thereof, to take or enter an exception to findings of fact or conclusions of law of a court or judge upon a cause or part of a cause, either legal or equitable, tried without a jury; nor shall it be necessary to take exception to the refusal of the court to make proposed findings of fact or proposed conclusions of law."

We find no merit in respondent's contention. We are also satisfied appellants have sufficiently pointed out in their brief the error relied upon on appeal.

The evidence in this case shows that, on June 14, 1932, the Kanaga Ranching Company entered into a

conditional sale contract with respondent, wherein the Ranching Company agreed to sell to respondent the vessel "Aleutian Native," for the sum of $51,500, of which the sum of five thousand dollars was paid at the time of the execution of the agreement, the balance of the payments to be made, one thousand dollars per month for one year beginning January 1, 1933, fifteen hundred dollars per month for the next six months, and two thousand dollars per month for the six months thereafter. It was further provided that all payments on deferred balances should be made to the First National Bank of Seattle, for the benefit of certain creditors, whose names were attached to the agreement. It was also provided that the purchaser should have immediate possession of the boat, and should pay all taxes and claims thereafter accruing against the vessel. Respondent was given the right to make certain alterations in the vessel to make it suitable for the purpose of transporting petroleum products. The contract further provided that, until such time as the purchase price should have been paid in full, title to the vessel should remain in the seller.

It is upon this last provision of the contract that respondent very largely relies to establish its contention that title to the vessel during the years 1933 and 1934 was still in the Kanaga Company, and therefore only taxable at the domicile of the owner, in Alaska.

The contract further provided that, wherever the word "seller" or "purchaser" was used, it should be taken and understood to mean successors and/or assigns of either of them, as the case might be.

It appears from the testimony of the secretary of the Kanaga Company that, at the time this agreement was entered into, the Kanaga Company was heavily in debt, that there were claims against the "Aleutian Native" of over sixty thousand dollars, and that the

claimants were insisting on payment. It appears from the testimony of Mr. Edwards, who was acting for the respondent in the purchase of this boat, that he had no dealings with the Kanaga Company, but that the purchase was made from the creditors of the Kanaga Company, acting through their attorney, Mr. Jones.

On the day the contract hereinbefore mentioned was executed, the Kanaga Company, recognizing the indebtedness and liens of the creditors mentioned, and in order to insure the payment thereof, entered into an agreement with such creditors, wherein the Kanaga Company assigned, conveyed, and set over to the First National Bank of Seattle, as trustee for the benefit of the lien claimants, *all of its right, title and interest in and to the vessel "Aleutian Native," and in and to the contract hereinbefore referred to, and the entire proceeds to be derived from the sale of the vessel, or from any insurance moneys,* awards, or other proceeds which might arise on account of the vessel. At the same time the two instruments hereinbefore mentioned were executed, the Kanaga Company also executed a bill of sale in blank to the "Aleutian Native."

These instruments, together with an escrow agreement, were turned over to the First National Bank of Seattle, as trustee. The escrow agreement recognized the rights of the lien claimants, as given under the assignment to the trustee, and instructed the trustee to pay to the lien claimants the entire proceeds received from the sale of the vessel, except such as were necessary to pay the cost of handling the transaction. After these instruments were executed, the Kanaga Company apparently ceased to have any further interest in the matter.

Nora Greenland, secretary of the Kanaga Company, testified that, at the time the contract was executed, the "Aleutian Native" was credited with the amount

of the claims which the creditors agreed to release, and they were charged with these sums; and that, at the end of the year 1932, the "Aleutian Native" was charged off and no longer carried as an asset of the company. Mrs. Greenland, when asked: "What final arrangement was worked out in order to satisfy the creditors?" answered: "They practically took the 'Aleutian Native' over. They really did take it over."

It also appears from the testimony that the lien claims were more than the sale price of the vessel, so the Kanaga Company in no event could have expected to obtain any part of the purchase price.

After the execution of the contract and other instruments mentioned, the creditors, acting through their attorney, Mr. Jones, took entire charge of the transaction, and all the dealings respondent had in regard to the matter were with Mr. Jones, representing the creditors. All parties treated the assignment as a complete transfer of title from the Kanaga Company to the bank for the creditors. At one time, when the respondent was in default, the creditors, through Mr. Jones, drew down all the escrow papers and took actual charge of the vessel. Thereafter, on May 31, 1934, the respondent, recognizing the rights of the creditors, entered into an agreement with the creditors, acting through their attorney, Mr. Jones, wherein it was agreed that, in consideration of the payment of four thousand dollars by first party (respondent) to second parties (lien claimants), certain modifications would be made in the original contract of sale. It will thus be seen that respondent recognized the lien claimants, represented by Mr. Jones, as the real owners of the vessel.

Mr. Jones testified that in none of these transactions was he representing or acting for the Kanaga Company, but was acting for the lien claimants.

It does not appear herein that any other taxing dis-

trict is claiming taxes on the "Aleutian Native" for the years 1933 and 1934, or that any taxes have been paid on this vessel for those years.

We think it apparent from the evidence that the full legal title to the "Aleutian Native" and all interest in and to the contract of sale to respondent passed to the bank, whose domicile is King county, as trustee for the lien claimants, for the purpose of paying their claims, and not as security.

We think our conclusion is justified under the decision in *State Bank of Black Diamond v. Johnson,* 104 Wash. 550, 177 Pac. 340, 3 A. L. R. 235. See, also, *General Motors Acceptance Corp. v. Seattle Ass'n of Credit Men,* 192 Wash. 613, 74 P. (2d) 198 (on rehearing), wherein we stated:

"When the conditional sale contract was assigned to the finance company, it transferred not only the right to collect the unpaid purchase price, but also the vendor's right, title and interest in the property sold."

The contract in the instant case contained practically the same provision.

In *Ayer & Lord Tie Co. v. Kentucky,* 202 U. S. 409, 50 L. Ed. 1082, 26 S. Ct. 679, we find the following rule announced:

"The general rule has long been settled as to vessels plying between the ports of different States, engaged in the coastwise trade, that the domicil of the owner is the situs of a vessel for the purpose of taxation, wholly irrespective of the place of enrollment, subject, however, to the exception that where a vessel engaged in interstate commerce has acquired an actual situs in a State other than the place of the domicil of the owner, it may there be taxed because within the jurisdiction of the taxing authority."

See, also, *Hays v. Pacific Mail S. S. Co.,* 58 U. S. (17 How.) 596, 15 L. Ed. 254; *Southern Pac. Co. v. Kentucky,* 222 U. S. 63, 56 L. Ed. 96, 32 S. Ct. 13; *Pacific*

*Cold Storage Co. v. Pierce County,* 85 Wash. 626, 149 Pac. 34.

Being of the opinion that the domicile of both the holder of the legal title and the purchaser under the contract is in King county, that the situs of the vessel during the years 1933 and 1934 was in King county, and that the assessor is only attempting to collect the tax against the property assessed and upon which it has a specific lien, does it then become material in whose name the property was listed or to whom assessed? We think not.

Rem. Rev. Stat., § 11111 [P. C. § 6882-7], provides in part:

"All real and personal property now existing, or that shall be hereafter created or brought into this state, shall be subject to assessment and taxation for state, county and other taxing district purposes . . ."

Rem. Rev. Stat., § 11112 [P. C. § 6882-8], as it existed prior to the 1939 amendment, provided in part:

"All personal property in this state subject to taxation shall be listed and assessed every year, with reference to its value on the first day of March in the year in which it is assessed. . . ."

Rem. Rev. Stat., § 11265 [P. C. § 6882-104], provides in part:

"The taxes assessed upon each item of personal property assessed shall be a lien upon such personal property from and after the date upon which the same is listed with and valued by the county assessor . . ."

It having been determined that the "Aleutian Native" was subject to taxation by King county for the years 1933 and 1934, it then becomes immaterial, in our opinion, in whose name the property may have been listed, or to whom assessed, under the decision in *Lewis Const. Co. v. King County,* 60 Wash. 694, 111 Pac. 892. See, also, *Western Electric Co. v. Norway Pac.*

*Const. etc. Co.,* 126 Wash. 204, 217 Pac. 1021; *Minshull v. Douglas County,* 133 Wash. 650, 234 Pac. 661.

For the reasons herein assigned, the judgment is reversed, with instructions to the trial court to dismiss the action.

BLAKE, C. J., STEINERT, and GERAGHTY, JJ., concur.

BEALS, J. (concurring)—I am in accord with the foregoing opinion, save in so far as it holds that paragraph (2), Rem. Rev. Stat., § 11315-1, quoted in the majority opinion, does not cover such a situation as is presented by respondent's complaint in this action. It is true that in many cases, when property exempted from taxation is mentioned, a liability is presupposed, and if the paragraph referred to property *exempted* from taxation, it might be held that the section contemplated property specifically exempted by law. Certainly, personal property, the situs of which is without the state of Washington, is exempt from taxation within this state.

I am in accord with the majority opinion in holding that, for other reasons, this action may be maintained, but I am also of the opinion that, when it appears from a complaint in which a tax is sought to be avoided upon the ground that the property is exempt from taxation within this state, for the reason that the situs of the property is without the state of Washington, under paragraph (2), Rem. Rev. Stat., § 11315-1, the collection of the tax may be restrained, pending the entry of final decree, and that the owner of the property is not limited to the remedy provided by Rem. Rev. Stat., § 11315-2, quoted in the majority opinion, by the terms of which he may pay the tax under protest, and bring an action at law to recover the amount paid.

With the exception noted, I concur in the opinion of the majority.