## ADAMS COUNTY et al. v. NORTHERN PAC. RY. CO.

### No. 9345.

Circuit Court of Appeals, Ninth Circuit.

Oct. 23, 1940.

A. O. Colburn, of Spokane, Wash., and Edwin C. Ewing, of Seattle, Wash., for appellants Adams County et al.

R. G. Sharpe, Sp. Asst. Atty. Gen. of Washington, E. W. Anderson, of Olympia, Wash., and B. Gray Warner, of Seattle, Wash., Ralph E. Foley, of Spokane, Wash., S. J. Krause, of Montesano, Wash., Thor C. Tollefson, of Tacoma, Wash., and Howard E. Phillips, of Davenport, Wash., for King County et al.

L. B. daPonte, Gen. Counsel, Northern Pac. Ry. Co., of St. Paul, Minn., and Robert S. Macfarlane, Western Counsel, and Dean H. Eastman, both of Seattle, Wash., for Northern Pac. Ry. Co.

Ralph J. Anderson, Sp. Asst. Atty. Gen. and Counsel for State Board of Equalization of Montana, for amicus curiae on behalf of State of Montana.

Earl Warren, Atty. Gen., and H. H. Linney, Deputy Atty. Gen. of California (Roger J. Traynor, of Berkeley, Cal., of counsel), for State of California as amicus curiae.

Before WILBUR, HANEY, and STEPHENS, Circuit Judges.

WILBUR, Circuit Judge.

Plaintiff, a Wisconsin corporation, owning and operating railway property in each of twenty-three counties of the State of Washington, sought an injunction in the District Court of the United States for the Eastern District of Washington restraining the collection by each of these counties of unpaid taxes upon the plaintiff's operating property alleged to amount to more than $3,000 for each of the assessment years, 1935 and 1936.

## Procedure.

The complaint was based upon assessments for said years by the State Tax Commission and charged that the valuation in each assessment was grossly excessive, fraudulent and discriminatory, in violation of the Constitution (Fourteenth Amendment) and laws of the State of Washington, and of the Fourteenth Amendment and the commerce clause of the Constitution of the United States, art. 1, § 8, cl. 3. After the complaint was filed and in reliance upon a Washington statute (ch. 106, p. 306, Laws of Washington for 1931) the Tax Commission, on June 8, 1937, adopted a resolution reciting that these assessments were apparently erroneous and excessive, and declared its intention to reassess the plaintiff's operating property for the years 1935 and 1936. The Commission gave the statutory notice of hearing. A hearing was held and on September 2, 1937, the Tax Commission entered its order reassessing plaintiff's operating property for the years 1935 and 1936. Although the reassessment purported to have been made by a different method from that followed in the original assessments the valuation for each year was fixed at the same amount as before, being $90,000,000 for 1935 and $88,500,000 for 1936. The members of the Tax Commission, sitting as a Board of Equalization, in accordance with the laws of the state, equalized these valuations at $39,489,470, and $39,238,513, respectively, the same figures at which the original assessments had been equalized. The tax was levied accordingly, being $1,401,549.12 for 1935 and $1,334,576.69 for 1936. The actual value was apportioned to the various counties upon the basis of track mileage and equalized in each county by the percentage of value used for assessment of other property, as required by law.

Thereafter on September 18, 1937, the court permitted plaintiff to file a supplemental complaint alleging material facts occurring after the filing of the complaint. This the plaintiff did, setting forth the reassessment, alleging that it was in substance identical with the original assessment and attacking it upon the same grounds. After hearing and overruling objections to the sufficiency of the complaint and supplemental complaint, the court re-referred the issues to a special master who, after hearing the parties and taking testimony, found the primary value of the plaintiff's operating property in the state to have been $63,073,445 for the year 1935 and $58,692,565,

for 1936. He placed the corresponding equalized values at $27,497,314 and $25,857,280. Upon that basis he found the taxes justly due for the years 1935 and 1936 amounted to $976,765.67 and $880,565.22, respectively. The court approved the master's findings and, upon condition of payment by the plaintiff of the proportion of the taxes there found by the court to be reasonable, perpetually enjoined defendant counties, excepting two of them as to which the case was dismissed for want of the jurisdictional amount in controversy, from attempting to collect any additional sum from plaintiff on account of taxes for 1935 and 1936.

From this decree the defendant counties appeal. Upon the ground that the court made the injunction dependent upon the payment of a portion of the tax larger than the plaintiff admits to be justly due it has taken a cross-appeal from that portion of the decree fixing the amount of the tax to be paid as a condition to the obtaining of injunctive relief.

## Jurisdiction.

At the outset we are confronted with a question of pleading. It is contended by defendants that the reassessment could not properly be attacked in a supplemental complaint, but, if vulnerable to attack, should have been treated as a new cause of action and made the basis of a new complaint in an independent action. Upon this point it is sufficient to observe that the Supreme Court has treated the filing of a supplemental complaint as a matter depending not so much upon strict law as upon the sound discretion of the court and we are not prepared to say that the trial court abused its discretion in permitting the filing of the supplemental complaint in this case. Cf. Missouri Rate Cases, 230 U.S. 474, 33 S.Ct. 975, 57 L. Ed. 1571.

The jurisdiction of the trial court was predicated upon diversity of citizenship and the presence of federal questions and of claims in jurisdictional amounts. There is no question of jurisdiction over the action stated in the complaint upon the original assessments; but a jurisdictional question of some difficulty is presented with respect to the charge in the supplemental complaint based upon the reassessment. This arises owing to an amendment to section 24 of the Judicial Code, which was adopted on August 21, 1937, 28 U.S.C.A. § 41(1), after the filing of the complaint but before the order permitting the supplemental complaint. This amendment provides that "no district court shall have jurisdiction of any suit to enjoin, suspend, or restrain the assessment, levy, or collection of any tax imposed by or pursuant to the laws of any State where a plain, speedy, and efficient remedy may be had at law or in equity in the courts of such State."

The amending act provides that it shall not affect suits commenced in the district courts prior to its passage and that "all such suits shall be continued, proceedings therein had * * * in the same manner and with the same effect as if it had not been passed" (28 U.S.C.A. § 41, sub. (1a) (b) c. 726, § 2, 50 Stat. 738). As the Supreme Court has approved a supplemental complaint in a rate case where a new rate statute was passed after the original complaint was filed attacking a previous statutory rate (Missouri Rate Case, supra) it would seem that a supplemental complaint would be appropriate in the case at bar, and we so hold. There is, however, one element in the Missouri Rate Case, supra, not present in the case at bar, namely, the saving of penalties under the old statute in the new one.

Assuming, however, that this conclusion may be erroneous because of the difference noted and that the supplemental complaint is in effect a new and original complaint, we must consider whether or not there was jurisdiction when the new complaint was filed under the provisions of the jurisdictional statute as amended (28 U.S.C.A. § 41, sub. (1), supra), which permit federal jurisdiction only in case there is no "plain, speedy, and efficient remedy * * * at law or in equity" in the courts of the state of Washington to which the plaintiff might have resorted. The defendant counties contend that the plaintiff had a choice of several such remedies in the state courts.

Arguments supported to some extent by adjudicated cases have been presented by counsel to the effect that certiorari (Lewis v. Bishop, 19 Wash. 312, 53 P. 165), a suit to enjoin the Tax Commission from certifying its reassessment to the county assessor (Fargo v. Hart, 193 U.S. 490, 503, 24 S.Ct. 498, 48 L.Ed. 761) and, in case such certification has been made, a suit to enjoin the assessor from spreading the reassessment upon the tax rolls of their respective counties (Denny v. Woo-

ster, 175 Wash. 272, 276, 277, 27 P.2d 328) were all available to the plaintiff if it desired to attack the assessment as being either illegal or excessive. In the view we take of the matter it is unnecessary to consider these remedies in detail; for, whatever may formerly have been the law as to their availability in the state courts all of them, by necessary implication, have been superseded by the single remedy prescribed by chapter 62, p. 201, Laws of 1931 of the State of Washington.

■ Section 2 of said chapter provides' in substance that in all cases of the levy of taxes which are deemed unlawful or excessive the person, firm or corporation from whom such tax is demanded may pay the amount demanded under a written protest and bring an action in any court of competent jurisdiction to recover such tax or any portion thereof so paid under protest. The taxpayer can recover in one action from all the counties involved in the protested tax. Section 7 of the same chapter provides that "except as permitted by this act, no action shall ever be brought attacking the validity of any tax, or any portion of any tax". The intention of the legislature to make the refund action the exclusive remedy in case of a tax claimed to be illegal because excessive could scarcely be more clearly expressed. In Ballard v. Wooster, 182 Wash. 408, 45 P.2d 511, it was held that an injunction could not be maintained against the collection of such a tax. This case is cited with approval in later cases by the State Supreme Court. On November 29, 1939, it was cited with approval in Petroleum Co., Respondent, v. King County et al., Appellants, 1 Wash.2d 489, 496, 96 P.2d 467. On February 19, 1940, the Supreme Court of the State of Washington, in State ex rel. State Tax Commission v. Ingersoll, 2 Wash. 2d 655, 99 P.2d 403, 406, said: "The cited cases hold that a taxpayer, in order to recover taxes claimed to have been illegally assessed, must pay the tax under protest and then bring an action to recover." The court cited In re Yakima Amusement Co., 192 Wash. 174, 73 P.2d 519.

In Denny v. Wooster, 175 Wash. 272, 27 P.2d 328, December 1, 1933, the Supreme Court of Washington held that an action could be maintained against a county assessor "to prevent him from extending upon the tax rolls of the county * * * in excess of that permitted by * * * the 40 Mill-Law * * *". The court held that such an injunction was not prohibited by Remington's Revised Statutes, § 11315—1 prohibiting injunction or restraining orders "to restrain the collection of any tax or any part thereof * * *".

It is not clear that the Supreme Court of Washington had in mind section 7, ch. 62, of the laws of 1931, p. 204, providing that "except as permitted by this act, no action shall ever be brought attacking the validity of any tax, or any portion of any tax * * *". See In re Yakima Amusement Co., supra.

■ The later decisions by the Supreme Court of Washington have apparently limited the case in 175 Washington, 27 P.2d (Denny v. Wooster) to actions to restrain the extension of a tax in violation of express statutory provisions. However, it is sufficient for our purposes to say that an action to prevent the extension of the tax considered in Denny v. Wooster, supra, is not a plain remedy, for the reasons stated. If the remedy is doubtful it does not deprive the federal court of jurisdiction. Corporation Commission v. Cary, 296 U.S. 452, 453, 56 S.Ct. 300, 80 L.Ed. 324; Mountain States Power Co. v. Public Service Commission of Montana, 299 U.S. 167, 170, 57 S.Ct. 168, 81 L.Ed. 99; Driscoll v. Edison Co., 307 U.S. 104, 110, 59 S.Ct. 715, 83 L.Ed. 1134.

The question then is as to whether or not the action to recover the tax paid is such a "plain, speedy, and efficient remedy" as to bar equity jurisdiction of the United States District Court in the instant case under the 1937 amendment to section 24 of the Judicial Code, 28 U.S.C.A. § 41, subs (1, 1a), 50 Stats. 738, ch. 726, §§ 1 and 2.

■ Upon established principles of equity jurisdiction it has long been held that an action at law for a refund after payment under protest, as provided by statutes similar to that of Washington, is under ordinary circumstances an adequate remedy in case of an illegal or excessive tax and as such an effective bar to the granting of equitable relief. Tennessee v. Sneed, 96 U.S. 69, 24 L.Ed. 610; Shelton v. Platt, 139 U.S. 591, 11 S.Ct. 646, 35 L.Ed. 273; Matthews v. Rodgers, 284 U.S. 521, 52 S.Ct. 217, 76 L.Ed. 447. However, it is equally well settled that special circumstances may render the action for refund a remedy of doubtful efficiency, in which case such jurisdiction is not excluded. Atlantic Coast Line v. Daughton, Commissioner, 262 U.S. 413, 43 S.Ct. 620, 67

L.Ed 1051; Skagit County v. Northern Pac. R. Co., 9 Cir., 61 F.2d 638, 86 A.L.R. 1012.

The plaintiff Railway Company contends that the effect of the statutory refund action is rendered doubtful and therefore inadequate in the present case owing to the fact, specifically found by the trial court, that some of the defendant counties are insolvent and that in consequence a judgment for plaintiff in such an action would, as to such counties, result only in the issuance of uncollectible warrants. That the statutory remedy would be inadequate and certainly therefore not "efficient" in such a factual situation is a conclusion supported by the Supreme Court. In Stewart Dry Goods Co. v. Lewis, 287 U.S. 9, 53 S.Ct. 68, 77 L.Ed. 135, the plaintiff had sought an injunction in a federal district court to restrain the collection of a tax on sales on the ground of conflict with the Fourteenth Amendment to the United States Constitution. The complaint was dismissed on the ground that the plaintiff had an adequate remedy at law in the form of a statutory refund action similar to that afforded by the laws of Washington. The statute provided that if the plaintiff was successful in obtaining a judgment the auditor should issue warrants for the amount of the judgment and interest to be paid out of the general fund of the state. But the bill alleged that for a long time such warrants had gone unpaid for lack of funds. The answer denied that allegation. The Supreme Court held that the trial court erred in dismissing the bill without a hearing upon the material factual question thus presented.

■■ The defendant counties sought to distinguish the case last cited by pointing out that whereas under the statute involved in that case the warrants were payable out of a general fund without any preference, the Washington statute authorizing the refund action gives judgments for tax refunds preference over other claims against the fund; but the trial court held, rightly as we think, that such statutory preference was in direct conflict with the State Constitution which itself gives preference to other specified mandatory and emergency expenses. Washington Const.Art. VII, §§ 1, 8; Art. VIII, §§ 1, 2. In view of this constitutional preference, of an initiative measure which placed an upper limit upon the tax levies, and of the great extent of tax delinquencies which it found to have accrued in the state in each of the three years preceding 1935, the trial court found that the plaintiff "would not receive a substantial portion of any sum paid under protest" in the event of success in the refund action. This finding was supported by evidence and leads to the conclusion that the exclusive remedy open to the plaintiff in the state courts was not "plain, speedy and efficient" and that the trial court did not err in assuming jurisdiction of these injunction proceedings.

We conclude that for the reasons above stated the trial court had jurisdiction of this action.

### The method of Assessment.

We come now to a consideration of the merits. And first it is to be observed that in the argument before this court the Railway Company abandoned its contention that the Fourteenth Amendment and the commerce clause of the United States Constitution had been violated and predicated its right to an injunction upon an alleged violation of the Fourteenth Amendment of the State Constitution (Art. VII, sec. 1) and of the statutes of the state applicable to the taxation of railway property (Ch. 130, p. 244, Laws of Washington, Extra Session 1925, Sections 11156 to 11171 inc., also, ch. 123, p. 356, Laws of Washington, 1935, Rev.St. 11156—1 to 11156—20, both relating to assessment, and ch. 106, p. 306, Laws of Washington 1931, Rev.St. 11301 to 11308, relating to reassessment.)

■ Here it is to be observed that while it is unquestionably true that the Tax Commission could not act in contravention of the Constitution and laws of the State of Washington and that it was competent for the Railway Company to waive its rights under the Federal Constitution in this litigation, it is also true that in the exercise of its equity jurisdiction the trial court was bound to observe the limits to that jurisdiction imposed by the Constitution and laws of the United States. Accordingly, in the decision of this case appropriate attention must be paid to the Constitution and laws of both state and nation.

■ The method of taxation of railway property at the time of the original assessment for 1935 was provided by ch. 130 of the Laws of Extra Session of 1925, supra; but this act was replaced by the act of 1935, supra, which was applied to the assessment for 1936. But the real contro-

versy in this case revolves about the re-assessment. Before considering the method adopted by the Commission in making the reassessment we must first dispose of a preliminary question. The Railway Company contends that under the circumstances as they existed the Tax Commission had no authority to make a reassessment at all. It argues that under the governing statute (ch. 106, Laws of Wash. 1931, supra) a reassessment could be made only in case the original assessment was found by the Tax Commission to have been excessive and that in the absence of such a finding the reassessment was void. A sufficient answer to this contention is the language of the statute. While it does provide that "the re-assessment shall not exceed the original assessment" it authorizes, indeed requires, a reassessment "whenever it shall appear to the tax commission from any protest accompanying the payment of taxes heretofore or hereafter filed * * * or complaint * *. * filed in any court * * * that any error in taxation has occurred in the assessment * * * of any property taxable in this state, and such assessment appears to be excessive or void in whole or in part". Here the reassessment was entered upon because it did appear from the Railway Company's complaint that the original assessments were erroneous and excessive. That the Commission later found the complaint's allegation of excess to be erroneous could not deprive it of jurisdiction of the reassessment proceedings based upon the complaint. Our discussion will, therefore, proceed upon the assumption that the Tax Commission did have statutory authority to reassess the Railway Company's operating property within the state for the years 1935 and 1936 at the time the reassessment in controversy was made.

The lower court held, and it was not disputed, that a reassessment if made should be governed by the same laws as the original assessments; that is to say, that the reassessment for 1935 should be governed by the act of 1925, supra, and that for 1936 by the act of 1935, supra.

However, regarding the material issues in this case the two acts have been treated by the parties and the trial court as being alike in substance and differing only in detail. It has been assumed, and correctly we believe, that the validity of the assessment for 1935 should be tested by the same principles as that for 1936.

Both statutes and state constitution provided for a uniform valuation of all property, including railroad property. But the assessment of plaintiff's operating property within the state was complicated by the fact that this property lies in twenty-three counties and is part of a great railway system that extends from Ashland, Wisconsin, to the Pacific Coast. It was further complicated by the nature of plaintiff's holdings, which included both operating and nonoperating property. Moreover the value of the operating property was not in its physical units alone but included intangible value, such as good will, growing out of the relation of the parts to each other and to the whole, values which are as properly to be considered in the process of assessment as those of the physical units. Adams Express Co. v. Ohio State Auditor, 166 U.S. 185, 17 S.Ct. 604, 41 L.Ed. 965.

Owing to these intangible elements growing out of the relation of the plaintiff's property within the state to that in other states it was necessary for the Commission to first determine the value of the operating property of the plaintiff's entire system, then allocate to the state of Washington its just proportion, and finally to assign to the various counties within the state their respective portions of the values thus allocated. These steps were specifically prescribed by the act of 1935 and were taken by the Tax Commission in making the reassessment. No question has arisen as to the propriety of determining and allocating these valuations. The controversy has arisen over the methods followed by the Commission in the process. There is no dispute over the mode of allocation to the counties. The plaintiff's attack is in substance directed against the method of the Tax Commission in determining the value of the operating property of the plaintiff's entire system and apportioning to the state of Washington its taxable portion of that property. Section 9 of chapter 123 of the act of 1935, supra, contains a provision with respect to such determination and allocation which, according to the contention of the Railway Company and the finding of the master, was violated by the Tax Commission. This section enumerates certain factors which, in determining the value of the operating property of any company whose properties lie partly within and partly without the state and in apportioning such value to the state, the Tax Commission "may * * *

778

take into consideration" together with "all other matters and things deemed pertinent by the commission". These factors are in the main those generally considered in determining the value of public utilities for rate-making purposes such as actual cost new, cost of reproduction less depreciation, and the market value of stocks and bonds. It was contended before the master and he found as a matter of law that "may" in this section must be read as "must". While we do not agree with this finding it is immaterial. The Commission had before it a report of the Railway Company covering most of these factors. The Commission's opinion states that it considered "all relevant factors" bearing upon the question of valuation before it and there is no evidence that it failed to consider any relevant factor. The Commission was not required to adopt any one of these factors as a test of value. It might upon consideration reject it as of little or no value. Railroad Comm. of California v. Pacific G. & E. Co., 302 U.S. 388, 58 S. Ct. 334, 82 L.Ed. 319; Pacific G. & E. Co. v. R. R. Comm. of California, D.C., 26 F. Supp. 507. Indeed this argument based upon the interpretation of "may" or "must", though stressed by the master in his report, has been disregarded in the Railway Company's briefs upon this appeal. Its attack has been directed against the Commission's handling of the various relevant factors, its conclusions, and final orders.

　　　　　Before taking up in detail the methods used by the Commission and the objections thereto as raised by the plaintiff Railway Company, the special master and the trial court, it will be necessary to consider briefly the respective functions of the State Tax Commission and the courts with relation thereto. The duty of assessing property for taxation and fixing the value at which it shall be assessed is confided to taxing officers, in this case the Tax Commission. When judgment is to be exercised as to value it is the judgment of the Taxing officer that must prevail. Broadly speaking, these values are conclusive upon the court and cannot be changed by the court by injunction or otherwise unless the value thus fixed is so excessive and arbitrary as to evidence actual fraud or constitute constructive fraud in fixing such valuations. This has long been and still is the rule followed by the Supreme Court in dealing with cases in which it is charged that a tax imposed by state authority is so excessive as to violate the due process

clause of the Fourteenth Amendment to the constitution of the United States. See Great Northern Ry. v. Weeks, 297 U.S. 135, 56 S.Ct. 426, 80 L.Ed. 532; Nashville, C. & St. L. Ry. v. Browning, 310 U.S. 362, 60 S.Ct. 968, 84 L.Ed. 1254. The Railway Company's contention seems to be that although the difference between the actual value and the assessed value was not so great in this case as to violate the Fourteenth Amendment of the United States Constitution according to the decisions applicable to such cases, it was sufficiently great to be invalid under the Constitution and laws of the state of Washington as interpreted by the Supreme Court of that state; but we have examined the decisions of that court and are unable to see any essential difference between them and those of the Supreme Court of the United States upon the effect of such difference. It is sometimes said in the decisions of the state court that the method of assessment may be such as to make the tax void; but as we understand these decisions this statement merely means that in considering whether or not the tax is excessive it is proper to consider the method by which the taxing authority reached its conclusion. For example it has been held in several cases that when the method used in taxing a railway company has the practical effect of bringing within the jurisdiction of the state property which is outside of it the method is wrong and of course the value is excessive by the amount of the property beyond the jurisdiction of the state thus subjected to the jurisdiction of the state levying the tax. See Nashville, C. & St. L. Ry. v. Browning, supra. But the mere fact that the method is wrong will not justify the court in setting the assessment aside. It is only when the valuation is fraudulently excessive that the courts of equity can intervene. Idem.

In support of the proposition that according to the law of Washington an assessment not amounting to actual or constructive fraud may be set aside, the special master in his report quotes the following passage from Weyerhaeuser Timber Co. v. Pierce County, 97 Wash. 534, 167 P. 35, 38, a case in which the court below had found the assessed valuation of certain property to be substantially double its true value: "Where the evidence shows arbitrary or capricious action on the part of the assessing officer, rather than the exercise of an honest judgment, or shows that he proceeded upon a fundamentally wrong

basis or theory, in making the assessment, the courts will grant relief against an overvaluation of real property, and this regardless' of the action of the board of equalization in the premises."

But note that the passage quoted recognizes the necessity of overvaluation, mere error in method is not enough to invalidate the tax. However, a more complete statement of the Washington law showing its substantial agreement with that laid down by the Supreme Court appears in the following additional extracts from the same issue: "The gist of the rule is stated in the case of *First Thought Gold Mines v. Stevens County*, 91 Wash. 437, 157 P. 1080, as follows: 'It is the established law of this state that courts will grant relief from a grossly inequitable and palpably excessive overvaluation of real property for taxation as constructively fraudulent, even though the assessing officer may have acted in good faith and thus without regard to the action of the board of equalization.'"

Was the valuation fixed by the reassessment in the case at bar so grossly excessive as to amount to constructive fraud? The special master has found not only error in method but also actual as well as constructive fraud in the assessment and the trial court has approved the finding. The Railway Company contends that our power to review the decision of the lower court predicated upon the master's report is restricted by rule 53(e) (2) of Civil Procedure, 28 U.S.C.A. following section 723c, which reads as follows: "In an action to be tried without a jury the court shall accept the master's findings of fact unless clearly erroneous." This rule, of course, regulates the conduct of the trial judge and not that 'of the appellate court. It is not a new rule but a restatement of an old and well-established rule. *Camden v. Stuart*, 144 U.S. 104, 12 S.Ct. 585, 36 L. Ed. 363; *Girard Ins. Co. v. Cooper*, 162 U. S. 529, 16 S.Ct. 879, 40 L.Ed. 1062. It is sufficient for the purpose of this case to say that we are not dealing with a question of specific findings of fact based upon the testimony of witnesses whose credibility is to be determined by the master and trial court but with a series of inferences predicated upon admitted facts resulting in ultimate conclusions as to value. Cf. *Carter Oil Co. v. McQuigg*, 7 Cir., 112 F. 2d 275. The opinion of the special master takes the form of a criticism of the various methods and reasoning of the tax commission in reaching its conclusion as to value and a substitution by the special master of his own methods, reasoning and conclusions based upon the same admitted facts.

In entering upon the consideration of the conflicting opinions of the commission and special master it is important to keep in mind a peculiar situation resulting from the state of the record. That record contains over 3,000 pages; the briefs approximately 1,000 pages; the opinion of the commission about 100 pages, and the report of the special master is about the same length as the commission's opinion. The decree of the lower court having been in favor of the Railway Company its counsel have devoted a large part of their argument to a defense of the special master's findings of value instead of an attack upon the findings of value by the Tax Commission; but the decree in favor of the Railway Company does not alter the fact that its success in this litigation depends upon a successful attack upon the assessment as fraudulently excessive. In making that attack it must overcome a very strong presumption. While it may utilize the findings of the master for the purpose of argument it must nevertheless fail unless it can overcome that presumption and convince this court that the assessment was illegal or so grossly excessive as to amount to constructive fraud.

In this connection it should be noted that plaintiff seeks to avoid this presumption by contending that the reassessment was really the work of the attorney to whom the Tax Commission had unlawfully delegated the performance of its duties. Although this contention is supported by the findings of the special master and of the trial court we think that it is unsupported by the evidence, which merely shows that the Commission sought to avail itself of expert assistance in conducting the hearing and drafting its opinion and order. *Morgan v. United States*, 304 U.S. 1, 58 S.Ct. 773, 999, 82 L.Ed. 1129, is not in point. In that case the officer whose duty it was to conduct a hearing absented himself and turned the matter over to a subordinate whose findings he approved in substance after an ex parte discussion. This was a clear case of delegation of authority. In this case the members of the Commission were present at the

hearing and discharged their duties in person, however much they may have been assisted by advice of counsel. The Railway Company was fully heard.

■ From what has been said it is obvious that the Commission's valuations cannot be overcome by showing that some other method of valuation, even a preferable method, might have been used. Valuation is an expression of opinion and judgment and the state law requires the exercise of that judgment by the Commission. As already shown, it is only when an erroneous method results in grossly excessive valuation that the courts may interfere with the Commission's valuation. For that reason much of the discussion in the briefs dealing with the comparative merits of the methods used by the Commission and the master is wholly immaterial.

### Was the valuation of the Tax Commission fraudulent?

■ In answering this question we must proceed to a more detailed consideration of the facts. In order to determine the value of the Railway Company's operating property within the state it was, as we have seen, necessary to find the value of the operating property of the company's entire system. In doing that the act of 1935, supra, required the Commission to substract the value of the nonoperating property from that of the entire assets of the company. It follows that the first step was to place a value upon these assets. Since the stock and bond market indicates the value which the buying public places upon properties whose securities are bought and sold upon the exchanges the Commission valued the company's assets upon that basis. Adams Express Co. v. Ohio State Auditor, 166 U.S. 185, 17 S.Ct. 604, 41 L.Ed. 965; 7 Cal.Jur. §§ 721, 723. To guard against the effect of temporary fluctuations unrelated to actual value the Commission used a one-year average. The plaintiff company made no objection to the Tax Commission's using the stock and bond market as a test of value but argued strenuously that a five-year average instead of a one-year average should have been used. The longer period would have been more advantageous to the plaintiff owing to the lower price levels of the earlier years; but it should be remembered that the primary question was not what the value had previously been but what it was on March 1, 1935, the date on which all property was assessed for taxation purposes. It seems too plain for argument that the use of the one-year period was not so unreasonable as to amount to an abuse of discretion. Indeed, it seems to us to have been more truly indicative of the value upon the assessment date than would have been the longer period advocated by the plaintiff and adopted by the special master.

The next subject of controversy is the amount to be deducted from the value of all the property of the Railway Company in order to ascertain the value of the operating property. The nonoperating property consists principally of two very large items; one, unsold grant lands of more than 6,000,000 acres, and the other, stocks and bonds of other corporations owned by the Railway Company. With much emphasis upon the Commission's duty under the statutes to find "cash value" which had been judicially identified with "market value" (Spokane, etc., Ry. Co. v. Spokane County, 75 Wash. 72, 134 P. 688; National Lbr. & Mfg. Co. v. Chehalis County, 86 Wash. 483, 150 P. 1164) the plaintiff company contends that the Commission's method of valuing the nonoperating properties was arbitrary and fantastic. Their method was to determine in whatever way seemed best adapted to the purpose the amount which in the Commission's judgment the ownership of its various nonoperating properties added to the market value of its outstanding stock and bonds. The resulting question will best be answered by considering briefly the Commission's action with respect to the major items of nonoperating property.

First, as to the grant lands. For this item the Commission allowed a deduction of $6,500,000, that being the amount which in the Commission's judgment investors in railway securities would believe the value of the company's stocks and bonds would be affected by its ownership of these lands. The Commission treated as important data in forming that judgment the past and prospective proceeds from sales of these lands. The special master and the District Court made a deduction of $33,942,749 for the year 1935 and of $31,846,162 for 1936 for these lands. This deduction was based upon the value fixed by the yearly assessments for taxation purposes upon these lands multiplied by the ratio which in each state the actual value has to the assessed value. To this was added the amount of outstanding contracts for the sale of grant

lands. It may be admitted that the Commission's method left much to be desired in the way of accuracy, owing to the difficulty of estimating the probable returns from future value; but it is, to be noted that these lands were carried on the plaintiff's books at $9,175,302, an amount much nearer the deduction allowed by the Commission than that made by the special master and the District Court.

The plaintiff asks us to accept the finding of the various county assessors in the several states as to the value of grant lands rather than the considered judgment of the Commission. It is also argued that to assess the grant lands at one value and to deduct a less value from the total value of all the railroad's property is in effect to tax the railroad twice on the difference between the value deducted and the value assessed. That is, between $6,500,000 and $33,942,749 for the year 1935, and $31,846,162 for 1936. The fallacy in this contention lies in the fact that the Commission was subtracting from the value ascertained by the stocks and bonds the value of the nonoperating property incorporated therein: that is, the added value due to the ownership of this property. If the base value had been ascertained by the addition of the value of all the items owned by the company, that is, by the cost of reproduction or historic cost of all the parts, less depreciation, the land value would first be added to get the total value of the Railway Company's property and then subtracted to get the value of operating property. But this was not done.

We next take up the question of what deduction should be made from the ascertained value of the Railway Company's entire assets on account of its ownership of the stocks and bonds of other corporations.

In computing the value of the plaintiff company's stock in the Chicago, Burlington and Quincy Railroad Company, the "Burlington", the Commission capitalized the Burlington's average annual net corporate earnings over a period of years at 8% and thus reached deductible amounts of $56,917,348 for 1935 and $49,296,620 for 1936. The special master and the court used the same method except as to the rate of capitalization. By using 6% instead of 8% these amounts were increased to $75,889,799 and $65,725,837 for the corresponding year, thereby reducing to that extent the taxable operating values.

In computing the value of the Spokane, Portland and Seattle Railway Company's stocks and bonds, of which the plaintiff company owned a half interest, the Commission used the same method as in the case of the Burlington stock but capitalized the S. P. & S. Co.'s net increase at 6% instead of 8%. This difference was occasioned by the Commission's belief that the Railway Company's ownership of both stock and bonds reduced the hazard of the investor against possible foreclosure. But, although approving the method of capitalizing net income in the case of the Burlington, differing from the Commission as to the rate of capitalization only, the master and the court rejected the capitalization method in valuing the plaintiff company's holdings of S. P. & S. Co.'s securities and used the market price upon the exchanges as the decisive measure of value. As a result of this difference the Commission allowed a deduction of $9,123,342 for 1935 and $10,451,308 for 1936, while the master and the court allowed corresponding deductions of $18,313,717 and $17,437,939.

The Railway Company's ownership of stock in the Northwestern Improvement Company presented a different type of problem. That company operates large coal properties in Montana and Washington and has extensive holdings of various kinds of property along the plaintiff's line, including lands, buildings, timber and other resources, and also owns securities of various kinds. It has no outstanding bonds. The plaintiff company owns all of its stock. The Commission's deductions on account of this ownership were $12,000,000 for 1935 and $10,500,000 for 1936. The master and the trial court allowed $16,533,333 and $15,000,000 respectively. These allowances were obtained by the capitalization of dividends. The Commission declined to follow that method for the reason that the plaintiff company had caused its subsidiary to declare dividends that were greatly in excess of its earnings. The Tax Commission considered the capital stock of this company fixed by the plaintiff in causing its reorganization in 1924 at $24,800,000 as a reasonable valuation as of that year. These assets, prior to the taxable year in question had been reduced by $14,261,364 and $17,455,344, respectively through the payment of dividends in excess of the aggregate net income. Subtracting these amounts from the assessed 1924 value of $24,800,000 leaves

782

$10,538,636 for the 1935 assessment and $7,344,656 for the 1936 assessment. Had the Commission used these figures as exact measures of deductible values the plaintiff company, which had received the benefit of these dividends would scarcely have been in a position to complain. But the Commission actually allowed the greater deductions as stated.

■ These differences in the methods employed by the Tax Commission, on the one hand, and the special master and the court, on the other, in determining what deductions should be made from the ascertained value of all the plaintiff's assets on account of its ownership of nonoperating properties in order to find the value of the taxable operating property, serve to illustrate the proposition that valuation of such property is essentially a matter of opinion.

We cannot say that the deductions made were unreasonably small or arbitrary and the finding of the trial court to the contrary cannot be sustained.

### Apportionment between the States.

■ The problem of apportioning the value of the Railway Company's operating property between the various states is one of great difficulty. It cannot be solved as a matter of state law altogether but depends upon the Constitution of the United States. The due process clause of the Fourteenth Amendment prohibits the state from taxing property outside of its .imits and within the jurisdiction of another state. Union Refrigerator Transit Co. v. Kentucky, 199 U.S. 194, 26 S.Ct. 36, 50 L.Ed. 150, 4 Ann.Cas. 493. Yet no exact formula for making the apportionment has been authoritatively declared. It has been held in some cases that an apportionment based upon mileage was proper under the circumstances. Pullman Co. v. Richardson, 261 U.S. 330, 43 S.Ct. 366, 67 L.Ed. 682. In others in which the facts were such as to make this method obviously unfair and result in gross injustice it has been rejected as inapplicable. Great Northern Ry. Co. v. Weeks, 297 U.S. 135, 56 S.Ct. 426, 80 L.Ed. 532. The presence of intangible elements to which we have referred makes exactness impossible. The net result of the cases is that any fair method of apportionment will be sustained and that any railway company which attacks the apportionment made by the taxing authority has the burden of showing that the

method adopted is as to it arbitrary and unreasonable and leads to a result that is grossly unfair and unjust. Union Tank Line Co. v. Wright, 249 U.S. 275, 282, 39 S.Ct. 276, 63 L.Ed. 602. Cf. Hans Rees' Sons, Inc. v. North Carolina, 283 U.S. 123, 133, 135, 51 S.Ct. 385, 75 L.Ed. 879.

■ The plaintiff company urged the Tax Commission to adopt as a basis of apportionment a highly composite test amounting to an average of the relative percentages of five different factors considered with reference to their distribution among the various states covered by the plaintiff company's system. These proposed factors were the following: (1) Relative operating revenue; (2) relative car and locomotive mileage; (3) relative traffic units, i. e., revenue net ton miles and relative passenger miles; (4) relative track mileage owned and operated; (5) relative physical properties as indicated by cost of reproduction less depreciation. It is impossible to consider these factors here in detail. Suffice it to say, the mere statement of the proposed test is enough to show that the Commission was not bound to adopt it where no statute or rule required such complexity. Furthermore, it should be noted that, save for the fifth factor above mentioned, the relative cost factor, the proposed test ignored the distribution of terminal values and the relative costs of construction, both of which are stressed as of prime importance by the Supreme Court in Wallace v. Hines, 253 U.S. 66, 40 S.Ct. 435, 64 L.Ed. 782, and in Great Northern Railway Co. v. Weeks, supra.

■ What the Commission did was to adopt as the best index of the relative value of a given portion of a railroad its relative earning power, present and prospective, as such earning power might reasonably appear to the buyer of stocks and bonds. Such a buyer, the Commission reasoned, would be influenced principally by the record of past earnings and to a considerable though lesser extent by the physical condition of the company's operating property. Accordingly it apportioned to Washington so much of the value of the system operating property as was indicated by assigning two-thirds weight to relative net operating income averaged over a period of five years and one-third weight to relative reproduction costs. In view of the obvious relationship of these two factors to railway earning power as viewed

by investors in stocks and bonds upon the market price of such securities, which price had without objection been adopted by the Tax Commission as a decisive test of the value of the plaintiff company's assets, we cannot say that this method of apportionment involved such injustice or inequality as to justify the intervention of the trial court in accordance with the principles which we have stated.

In this connection it should be noted that the Railway Company complains of the method used by the Tax Commission in determining the cost of reproduction which it used as a factor in apportioning the value of the operating property to Washington. It points out that this determination was based upon a finding of the Interstate Commerce Commission in 1917 made with reference to 1914 prices, the Tax Commission adopting that finding and making additions for subsequent betterments along with deductions for subsequent depreciation. The Company particularly objected to this method on the ground that it made no allowance for a shrinkage in the value of its operating lands amounting to one-third since the valuation by the Interstate Commerce Commission; but the Tax Commission found that, by reason of other elements the cost of reproduction at current prices was actually considerably in excess of the figures adopted by it of which the company complains. Even if we assume that the Commission adopted an erroneous method in estimating the reproduction cost such an error was immaterial unless the Railway Company can show that this error resulted in such an excessive valuation as to indicate fraud, actual or constructive. Nashville C. & St. L. Ry. v. Browning, supra; Weyerhauser Timber Co. v. Pierce County, supra. This the company has not done. It has merely complained of the method.

The Railway Company contends that the Tax Commission not only adopted an erroneous method in determining the cost of reproduction but that it should not have paid any attention whatever to that factor. In making that contention it argues that much of its operating property is not paying expenses and cannot reasonably be expected ever to be remunerative, and that its value is therefore salvage value only, and that it is palpably absurd to estimate that value by the cost of reproduction. But this property, which is said to be unremunerative, consists in the main of branch lines; and it is exceedingly difficult to say of any group of operating branch lines that they are without utility. As feeders to the main line they may be of essential importance without reflecting that importance in allocated earnings. But, assuming that as to some of these lines the cost of reproduction would be little evidence of value, that fact alone could have no material importance in the present case. In the first place the Company's Washington operating property was not valued by the Tax Commission upon the basis of reproduction cost. That cost was used as a factor in apportioning value otherwise determined and as such factor it was assigned a weight of one-third only. In this connection it should be noted that in the method of apportionment which the Company urged the Commission to adopt in making this apportionment, the cost of reproduction was the fifth of the five controlling factors. Moreover, in view of the practically controlling effect which the Supreme Court has assigned to reproduction cost in determining value as a rate base in many of its decisions (Los Angeles Gas & Electric Co. v. California State R. R. Comm., 289 U.S. 287, 53 S.Ct. 637, 77 L.Ed. 1180) it would be extremely difficult to hold that the Commission had acted so unreasonably as to show constructive fraud even if it had recognized cost of reproduction less depreciation as a dominant factor in finding the primary value of the plaintiff's operating property within the state for the purpose of taxation. And it is to be noted that, although the Commission fixed the primary value for that purpose at $90,000,000 for 1935 and at $88,500,000 for 1936, it had actually fixed the cost of reproduction less depreciation of the plaintiff's operating property within the state at $156,901,317 as of December 31, 1934, and at $156,313,054 as of December 31, 1935. This, of course, took no account of the system's intangible value.

### The question of discrimination.

Finally it is contended that the Tax Commission whose duty it was under the laws of Washington (Sec. 70, ch. 130, p. 273, Laws of 1925, Ex.Sess.; Sec. 14, ch. 123, p. 367, Laws of 1935) to sit as a board of equalization and in that capacity to equalize the assessed values in the various counties and in so doing to assess railroad property at the same ratio of as-

sessed value to market value as in the case of other property, had in violation of these laws intentionally and grossly discriminated against the plaintiff in equalizing its Washington operating property. This contention was accepted by the trial court which found that, whereas the ratio of assessed value to market value, as equalized by the board, was with respect to other locally assessed property 44.99% and 45.20%, respectively, for 1935 and 1936, the ratio of assessed to market values was as to the plaintiff's property 62.61% and 66.85% for the corresponding year. If this discrimination were real it would indeed be a serious matter and might warrant the interference of the court; but a reference to the record shows that the finding of such discrimination was reached by miscalculation. It was obviously arrived at by comparing the Commission's values of other property with the trial court's valuation of the plaintiff's property. If we accept the Commission's valuation of the plaintiff's property as well as of other property there was no discrimination. Since that valuation has not been shown to be unreasonably excessive, the charge of discrimination cannot be maintained.

The decree is reversed and the trial court directed to enter a decree of dismissal.

HANEY, Circuit Judge, concurs in the result upon the merits, but is of opinion that upon the record here the court below did not have jurisdiction.